Patricia **BONNER–LYONS** et al.,
Plaintiffs, Appellants,

v.

**SCHOOL COMMITTEE OF the CITY OF
BOSTON** et al., Defendants,
Appellees.

No. 73–1150.

United States Court of Appeals,
First Circuit.

Argued June 7, 1973.

Decided June 29, 1973.

Jonathan Shapiro, Boston, Mass., with whom Max D. Stern, Boston, Mass., Jack Greenberg, and Sylvia Drew, New York City, were on memorandum, for plaintiffs-appellants.

Matthew T. Connolly, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass., was on memorandum, for defendants-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiffs, members of The Ad Hoc Parents' Committee for Quality Education, alleging violations of their first amendment and equal protection rights, initiated this action under 42 U.S.C. § 1983 to enjoin defendants, the members of the School Committee of the City of Boston, from using the internal distribution system of the City's schools to disseminate notices opposing the use of bussing to achieve school integration. In the alternative, plaintiffs sought an order compelling defendants to allow them to use this same system to distribute communications publicizing pro-bussing rallies. The trial court denied repeated requests for preliminary injunctive relief and this appeal followed. Since we conclude that by disseminating the notices in question the defendants utilized the school distribution system to support and promote the views of one group while denying the use of this system to groups representing other points of view, we reverse and grant the injunctive relief specified below.

The following facts are not in dispute. On March 29, 1973, defendants adopted an official resolution authorizing the distribution of notices to all Boston parents urging them to support a march and rally to be held at the Massachusetts State House on April 3. The purpose of this rally was to express opposition to the re-

tention of the Massachusetts "Racial Imbalance Law," 9 M.G.L.A. c. 71, §§ 37C–37D, and to the use of forced bussing as a tool to achieve racial integration in the schools. When plaintiffs requested defendants either to abandon this planned distribution or to permit the dissemination of pro-bussing notices, defendants refused to agree to either alternative. Plaintiffs then filed this suit and sought a temporary restraining order against the distribution. Thereafter, pursuant to defendants' resolution, on March 30 the following notice was distributed by means of the school system's "fan-out" distribution procedure to the approximately 97,000 students in the Boston system.[1]

"Dear Parents:

At a meeting on March 29, 1973, a resolution of the School Committee to support the Parents' March on the State House on Tuesday, April 3, 1973, at 10:00 A.M. was passed unanimously.

The purpose of the meeting is to inform the Governor and members of the Legislature that parents and the Boston School Committee stand united in opposition to forced busing and redistricting now being considered by the State Board of Education.

All parents are encouraged to write the Governor, the Senators and the Representatives in support of House Bill 3439 which opposes busing without the written consent of the parents."

On April 3 the anti-bussing rally was held as scheduled and, on the following day, plaintiffs' initial appeal from the denial of a temporary restraining order to prevent the distribution of these notices was dismissed as moot. On April 13, 1973, however, plaintiffs filed a further motion for injunctive relief seeking in particular an order requiring defendants to make the school distribution system available for the dissemination of notices concerning a pro-bussing rally tentatively set for late April. Due to difficulties in obtaining a hearing, however, this motion was not heard until April 30 and the proposed rally had to be postponed and ultimately cancelled. Thereafter, the trial court, finding, *inter alia*, that plaintiffs had failed to establish either that defendants had interfered with their first amendment rights or that a federal question was presented, issued a brief order denying the requested preliminary injunction.

On this background we find ourselves unable to agree with this disposition. As we read the March 30 notice, it seems apparent that this message tended to lend support and to mobilize opinion in favor of the position of those private parties who sponsored the April 3 "Parents' March on the State House." Under these circumstances, we conclude that defendants, by authorizing this distribution, sanctioned the use of the school distribution system as a forum for discussion of at least those issues which were treated in this notice.[2] When de-

---

1. According to plaintiffs' counsel's affidavit, the system's "fan-out" distribution procedure operates in the following manner. A message which is ready for distribution is first transmitted by telephone from the Deputy Superintendent to six area Assistant Superintendents and then by them to the individual schools in their charge. At the schools the message is typed, reproduced, and distributed to teachers who then deliver it to each individual student.

2. We are further buttressed in our conclusion that defendants have made available the school distribution system as a forum for the discussion of the possible

repeal of the "Racial Imbalance Act" and the forced bussing of school children by the indication in the record that on April 30, 1973, defendants apparently authorized the distribution of a second set of notices, publicizing an anti-bussing rally scheduled to be held on May 2. While the record has not been fully developed with regard to this incident, we note that defendants state that these notices were not prepared by them but rather by the Home and School Association which they describe as "a private group." If these representations are found to be true, a clearer example of an impermissible selective opening of a forum to a group whose views are favored is difficult to imagine.

fendants' refusal to allow plaintiffs access to this system is considered in light of this conclusion, the trial court's error becomes manifest since it is well settled that once a forum is opened for the expression of views, regardless of how unusual the forum, under the dual mandate of the first amendment and the equal protection clause neither the government nor any private censor may pick and choose between those views which may or may not be expressed. *See, e. g.*, Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); National Socialist White People's Party v. Ringers, 473 F.2d 1010 (4th Cir. 1973) (en banc); Women Strike for Peace v. Morton, 472 F.2d 1273 (D.C.Cir.1972); People Acting Through Community Effort v. Doorley, 468 F.2d 1143 (1st Cir. 1972); United States v. Crowthers, 456 F.2d 1074 (4th Cir. 1972).

Under these circumstances and particularly in light of the fact that defendants refused to represent either in the trial court or in oral argument on appeal that no further notices of this type would be distributed, we remand with directions that the defendants, their agents, servants, or employees be enjoined from causing or directing administrators or teachers employed in the Boston Public Schools from distributing, in classrooms or on school premises during the hours of required school attendance, to pupils enrolled in said schools, notices calling the attention of their parents or others to or inviting them to attend particular rallies, meetings, or other activities designed to support a particular viewpoint on so-called racial imbalance legislation now pending in the General Court, or soliciting them to engage in letter-writing or activity in support of a particular viewpoint on such legislation, unless fair and reasonable timely opportunity is afforded to others having differing views to use the same channels to invite attendance at or call attention to rallies and activity in furtherance of such differing views.

Remanded for proceedings consistent with this opinion.