CLERGY AND LAITY CONCERNED, Brian Karcher, David Chevrier, Eloise Chevrier, Stephen Chevrier; and Father Andrew Skotnicki, Plaintiffs,

v.

CHICAGO BOARD OF EDUCATION and Ruth B. Love, Superintendent of Schools, Defendants.

No. 83 C 2693.

United States District Court, N.D. Illinois, E.D.

May 17, 1984.

Scott C. Colky, Kate, Hirsch, Wise & Colky, Chicago, Ill., for plaintiffs.

Edward C. Peterson, Robert A. Wolfe, Patricia J. Whitten, Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

Plaintiffs bring this action, pursuant to 42 U.S.C. § 1983, to have declared unconstitutional the practice of the Chicago Board of Education allowing military recruiters access to its schools while denying the same privilege to plaintiffs who are anti-war activists. The cause is before the Court on defendants' motion to vacate an order of January 20, 1984 granting summary judgment in favor of plaintiffs, and for leave to file their answer to plaintiffs' summary judgment motion. For the following reasons, the motion is denied.

### I

Plaintiffs are the Clergy and Laity Concerned, an organization opposed to war that has developed programs, presentations and literature regarding legal alternatives to the draft and military service; Father Andrew Skotnicki, a draft counsellor associated with the Clergy and Laity Concerned; Brian Kracher, a student at Chicago's Morgan Park High School; Stephen Chevrier, a student at Chicago's Kenwood Academy; and David and Eloise Chevrier, parents of plaintiff Stephen Chevrier. Defendants are the Board of Education of the City of Chicago and General Superintendent of Schools, Dr. Ruth B. Love.

This suit was filed on April 19, 1983; defendants answered on May 23, 1983; and as set forth in the Court's January 20, 1984 Memorandum, briefing was scheduled on a motion for summary judgment to be filed by plaintiffs. Adhering to the schedule, plaintiffs filed their motion, memorandum of law, supporting affidavits and exhibits. Defendants did not answer, nor did they seek an extension of time. Based on the record as of January 20, 1984, the Court determined that there was no issue of material fact and granted summary judgment

in favor of plaintiffs. It is this judgment that defendants now seek to vacate.

Defendants' one paragraph motion merely states that they are asking the Court to set aside the judgment and allow them to file their answer to plaintiffs' summary judgment motion. In support they attach the affidavit of Edward C. Peterson, Esq., one of their attorneys, which sets forth the reasons he failed to contest the summary judgment motion. Although the motion does not specify under what authority it is predicated, a review of it and the attached affidavit clearly indicates that defendants are seeking to vacate the judgment under Rule 60(b), Fed.R.Civ.P. After carefully reviewing the record, defendants' motion and attached affidavit, the Court concludes that reasons given for their failure to contest plaintiffs' summary judgment motion are insufficient as a matter of law to justify setting aside the judgment.

## II

■ Relief from a judgment under Rule 60(b) is extraordinary and will only be granted "upon a showing of exceptional circumstances." *DiVito v. Fidelity and Deposit Company of Maryland*, 361 F.2d 936, 938 (7th Cir.1966); *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977); *Flett v. W.A. Alexander & Co.*, 302 F.2d 321, 323 (7th Cir.1962). In order to qualify for relief under the rule, a "movant must demonstrate that he has a meritorious defense and that arguably one of the four conditions for relief applies—mistake, inadvertence, surprise or excusable neglect." *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.*, supra at 809; *See Universal Films Exchange v. Lust*, 479 F.2d 573, 576 (4th Cir.1973); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970). Thus, the test to determine whether this Court will vacate the judgment is two pronged: (1) whether the failure of defendants' attorneys to contest the summary judgment motion was due to mistake, inadvertence, surprise or excusable neglect; and (2) if so, whether defendants can show a meritorious

defense to the summary judgment which has been granted in plaintiffs' favor.

■ The affidavit of attorney Edward Peterson simply states that he was one of the attorneys having responsibilities for defending this suit; because he was responsible for answering the summary judgment motion, no other attorney handling this case worked on the answer; and, besides other pressing matters in the office, the death of his father and the settling of his fathers affairs kept him from complying with the briefing schedule with which he was aware. Although the Court is sympathetic with the personal problems faced by defendants' attorney, his reasons for failing to contest the motion for summary judgment do not entitle defendants to relief under Rule 60(b).

■ Defendants contend that the failure of their lawyer to contest the motion was "excusable neglect." Excusable neglect is generally understood to be that course of action which a reasonably prudent person would take under the same or similar circumstances. *See e.g. U.S. for the Use and Benefit of Davison v. York Electrical Construction Co.*, 25 F.R.D. 478, 479 (D.N.D.1960). Obviously, however, the fact that an attorney has other pressing matters to handle, is faced with personal problems and elects or fails to answer a motion for summary judgment, is not excusable neglect. *See e.g., Pinero Schroeder v. Federal National Mortgage Ass'n.*, 574 F.2d 1117, 1118 (5th Cir.1978); *Maghan v. Young*, 154 F.2d 13 (D.C.Cir.1946); *Greene v. Pyatt*, 78 F.R.D. 362, 363 (E.D.N.Y.1978). When encountered with problems that apparently caused his failure to contest plaintiffs' motion, the reasonably prudent action which defendants' counsel should have taken under the circumstances, would have been to file a routine request for an extension of time. This Court was never informed of the fact that defendants' attorney was not able to prepare an answer to plaintiffs' motion.

Further, the affidavit states that attorney Peterson was the only one of defendants' several attorneys who was handling

this matter; defendants do not show why another of their several attorneys could not have answered the summary judgment motion or, at the very least, why another of their attorneys did not seek an extension of time for defendants to answer. *See Flett v. W.A. Alexander Co.,* 302 F.2d 321, 323 (7th Cir.1962) (no showing of why second attorney could not have handled case). Therefore, the affidavit in support of defendants' motion to vacate does not establish that the failure to answer the motion was due to excusable neglect. In fact, the conduct of defendants' attorney falls far short of the exceptional circumstances required to vacate a judgment. For these reasons, the motion to vacate should be denied.

## III

■ But assuming, *arguendo,* that defendants have made a showing of excusable neglect, their proposed answer to plaintiffs' motion for summary judgment does not interpose a meritorious defense. Their opposing memorandum and supporting material do not contradict or raise any issue of fact or assert any principle of law which would require this Court to deny plaintiffs' motion.[1] It appears that the undisputed facts are as follows.

During the period alleged in the complaint, defendants have maintained a policy that allows representatives of the armed forces access to the Chicago public high schools; military recruiters can disseminate literature, post advertisement on school grounds and in school papers, conduct workshops, counsel students as to careers in the armed services, and administer vocational aptitude tests. Father Skotnicki, during the same period, repeatedly contacted employees of the Chicago Board of Education to request permission on behalf of himself and the Clergy and Laity Concerned for access to the public high schools for the purpose of providing stu-

dents with information and counselling regarding draft registration, military service, conscientious objection and legal alternatives to the draft, specifically through distribution of literature and personal contact with students. Defendants have consistently denied plaintiffs, and any other groups with similar views, access to the schools.

Plainly, defendants' policy denies plaintiffs access to the schools while at the same time allows military recruiters the opportunity to enter school premises. It is clear that the school board is discriminating against plaintiffs based on the content of the message they want to convey to students. Defendants voluntarily allow access to the schools to one group, yet, at the same time deny access to another group which seeks to disseminate opposing information. Such a policy has the effect of favoring a particular viewpoint on careers in the military service.

■ Once it opens a forum for the expression of views, under the dual mandate of the First Amendment and the equal protection clause, defendants as agents of state government cannot pick and choose which views they feel should be expressed in the forum. *Bonner-Lyons v. School Committee,* 480 F.2d 442, 444 (1st Cir. 1973). In our system of government, "students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate." *Tinker v. Des Moines School District,* 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969). When a restriction has the effect of favoring the expression of a particular point of view, the First Amendment is plainly offended, and such a restriction is subject to strict scrutiny. *See First National Bank v. Bellotti,* 435 U.S. 765, 785–86, 98 S.Ct. 1407, 1420–21, 55 L.Ed.2d 707 (1978) ("Especially where, as here, the legislature's suppression of speech suggest an attempt to give one side of a debatable public ques-

---

1. At the same time defendants filed this motion to vacate, they filed a second motion titled "Motion for Reconsideration". As is apparent from the discussion in this Memorandum, the Court has reconsidered its January 20th order and adheres to the ruling. Accordingly, the motion for reconsideration is denied.

tion an advantage in expressing its views to the people, the First Amendment is plainly offended."); *City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commissions*, 429 U.S. 167, 175–76, 97 S.Ct. 421, 426–27, 50 L.Ed.2d 376 (1976); *Consolidated Edison Co. v. Public Service Commission*, 447 U.S. 530, 544–48, 100 S.Ct. 2326, 2337–39, 65 L.Ed.2d 319 (1980). Here, defendants denial of access substantially favors one point of view, and so this restriction is only valid if it is "finely tailored to serve substantial state interests, and the justification offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown*, 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980); *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

Defendants argue that plaintiffs are not entitled to access to the schools because such access would constitute an establishment of religion. They contend that since Father Skotnicki is a clergyman and because the content of plaintiffs' message is religiously oriented, their presence in the public schools would be an impermissible establishment of religion. Thus, defendants argue that they are justified in denying equal access to plaintiffs because to allow them access would violate the establishment clause.

The validity of defendants' argument necessarily depends on establishing that the nature of plaintiffs' proposed presentations in the schools are religious. However, the facts of this case do not support defendants' argument. Its only support in the record is the affidavit of Dr. Allen Smith, director of the Chicago Board of Education's Bureau of Guidance Programs and Services. But, the affidavit contains only a conclusory statement that because Dr. Smith felt the presentations proposed by plaintiffs were "religiously oriented", plaintiff should be denied access to Chicago's public high schools. His affidavit contains no statement of facts to support this conclusion. Expression of opinions and conclusions "are totally ineffectu-

al, and are not to be given any weight whatever, in a summary judgment proceeding." *G.D. Searle & Co. v. Chas. Pfizer & Co.*, 231 F.2d 316 (7th Cir.1956). Furthermore, in their memorandum opposing summary judgment, defendants admit that the "presentations [plaintiffs] proposed making are not specifically religious . . . ."

Also, the Court does not consider it significant that one of the plaintiffs is a priest. It is the nature of plaintiffs' message that is in issue and, as defendants admit, their message is secular, not religious. A clergyman can express his views on a secular subject without making his presence in the schools religious in nature. Accordingly, there is a complete lack of any probative evidence in defendants' submissions which raises any genuine issues of fact over the religious nature of plaintiffs' message.

Moreover, a policy of allowing religious groups access to a public forum equal to that allowed secular groups would not violate the establishment clause. In *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), the Supreme Court held that a university's policy of excluding religious groups from facilities it had opened to other groups violated the fundamental principle that a state regulation of speech be content neutral. The university, in order to justify its discriminatory exclusion of religious groups from the school facilities which it had opened to other groups, argued that allowing equal access to these groups would violate the establishment clause. The university contended that it had a compelling interest in ensuring a separation of church and state. The Court concluded that, although the university's interest in complying with its constitutional obligations under the establishment clause could be characterized as compelling, an "equal access" policy is not incompatible with that clause. Likewise, even if defendants had shown that plaintiffs' messages were religious, a policy of equal access would not be violative of the establishment clause. The First Amendment demands neutrality of treatment between religious and non-religious groups.

*Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 792–93, 93 S.Ct. 2955, 2975, 37 L.Ed.2d 948 (1979).

Defendants next contend that in allowing military recruiters access to the schools, they have not created an open forum. Relying on the Supreme Court's recent decision in *Perry Education Association v. Perry Local Educator's Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), defendants argue that public schools belong to a category of property where access is subject to strict control. In *Perry,* two rival unions had long used the school systems internal mail facilities to contact teachers. After an election selecting one of them as an exclusive bargaining agent for the teachers, a collective bargaining agreement was entered into which provided that no other labor union except the exclusive bargaining agent would be allowed access to the schools' internal mail system. The rival union sued, alleging that preferential access to the internal mail system violated its rights under both the First Amendment and equal protection clause. The Court held that because the schools' internal mail system was not either a public or limited forum, the school board could restrict the use of that facility.

Contrary to defendants' assertions, *Perry* did not hold that a public school system belonged to the category of property in which it is permissible to deny access based on the viewpoint of the speaker. Rather, the Court held that "the *school mail facilities* at issue here fall within this third category." *Id.* 103 S.Ct. at 955 (emphasis added). All *Perry* establishes is that a school board may constitutionally restrict access to certain facilities within a school system, but it does not establish that a school board can completely deny access to the whole school system to a group that wants to express views differing from those held by a group that has been allowed access.

More importantly, the rival union in *Perry* had available to it substantial alterna-tive channels of access in the schools. The rival union was not denied complete access. The Court noted that "the reasonableness of the limitations on [the rival union's] access is also supported by the substantial alternative channels open for ... communication to take place." *Id.* 103 S.Ct. at 959. In this case, plaintiffs are not allowed any access. They do not, in contrast to the plaintiffs in *Perry,* have available to them "substantial alternative channels" to present their message to the students.

Even though schools are not traditional open forums where viewpoint discrimination is *per se* unconstitutional, many cases have held that the states' obligation of viewpoint neutrality applies to discriminatory access restriction imposed in public schools. For example, in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Court struck down a restriction on students wearing armbands in protest of the Vietnam War in part because the school board did not prohibit the wearing of any other symbols by the students. *Bonner-Lyons v. School Committee,* 480 F.2d 442 (1st Cir.1973), prohibited a school board from disseminating, through the schools message distribution systems, information against forced busing while denying proponents of busing equal access to the message distribution system. Another court required a school board to rent its school auditorium to a racially discriminatory organization because the auditorium was available for use by other private organizations. *National Socialist White People's Party v. Ringer,* 473 F.2d 1010 (4th Cir.1973). *See also, e.g., Knights of the KKK v. East Baton Rouge Parish School Board,* 578 F.2d 1122 (5th Cir.1978); *Gay Student Organization v. Bonner,* 509 F.2d 652 (1st Cir.1974); *Brooks v. Auburn University,* 412 F.2d 1171 (5th Cir.1969). Thus, although schools are not traditional public forums, courts have consistently struck down access restrictions when such restrictions are based, in part, on the viewpoints of the speakers' messages. In the instant case,

**1414**

defendants are restricting access to plaintiffs based on the viewpoint of their message; defendants have not met their burden of showing a compelling justification for excluding plaintiffs from the forum.

Defendants' arguments against allowing plaintiffs access to the schools center on their fear that plaintiffs will use the school to propagandize their views on the moral and social evils of war. These arguments misperceive the essence of this suit. This is not an "absolute access" case, where plaintiffs, once allowed access to the forum, would be free to discuss any subject matter. This is a case for a claim of "equal access" to discuss a subject that the school board has already approved when it allowed military representatives into its schools. There is nothing in the record to suggest that the military representatives are expressing their views on the moral or social issues of war itself; the existing record only shows that the representatives are disseminating information to the students about careers in the military. Therefore, plaintiffs seek access to the schools for the limited purpose of providing information on legal alternatives to the draft and military service; they are not seeking to disseminate any information about the moral and social evils of war. Further, plaintiffs are subject to all time, place and manner restrictions that defendants have placed on military recruiters in each high school. Thus, for example, if a particular high school only allows the military representatives to sit in the counsellors' office and distribute literature, plaintiffs' access is limited to the same place and manner in that particular high school.

For the foregoing reasons, the motion to vacate is denied. The parties are invited to propose a draft judgment order, consistent with the above expressed views, for consideration and entry by the Court.

So ordered.