Emory SEARCEY, Tom Coffin, Zachary Coffin, Constancia Romilly, Chaka Forman, Anne Nicolson, Eric Carter, Donald Stone, John Storey, Flora Stone, and the Atlanta Peace Alliance,

v.

Alonso CRIM, Individually and in his official capacity as Superintendent of the Atlanta Public Schools and the Atlanta Board of Education

United States of America, Intervenor.

Civ. A. No. C84–751A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 13, 1986.

**314**

Ralph Goldberg, Cooperating Atty. National Lawyers Guild, Atlanta, Ga., for plaintiffs; Jim Feldman, of counsel.

Allie S. Edwards, Fortson & White, Atlanta, Ga., Vince Garvey, DOJ, Civil Div., Myles Eastwood, Washington, D.C., for defendants.

### ORDER

SHOOB, District Judge.

Plaintiffs in this First Amendment action are "peace activists," parents, students, and a teacher who challenge the Atlanta Board of Education's policy of granting military recruiters access to Atlanta public schools while denying similar access to peace activists. Plaintiffs seek an opportunity equal to the one afforded military recruiters to place their literature on school bulletin boards and in the offices of school guidance counselors and to participate in

school "Career Days" and "Youth Motivation Days." Presently before the Court are motions for summary judgment and for partial summary judgment filed by plaintiffs, defendants, and the United States as intervenor-defendant.

For the reasons that follow, the Court concludes that defendants have violated plaintiffs' First Amendment rights and, therefore, that plaintiffs are entitled to partial summary judgment. At this time, however, the relief to which plaintiffs are entitled is more limited than some other courts have ordered at the summary judgment stage.[1] The Court will issue an injunction securing *only* plaintiffs' right to present information about peace-oriented educational and career opportunities to students by placing literature on school bulletin boards and in the offices of school guidance counselors and by participating in "Career Day" programs. The Court must defer until trial the question whether defendants have so opened the schools to outside expression that they must also allow plaintiffs to discuss more generally the merits of military service.

### DISCUSSION

Because the primary mission of public schools is to educate students, the First Amendment does not prevent the Board of Education from limiting the use of school facilities solely to educational purposes. If, however, the schools choose to open their doors to expression by outside groups and individuals, they must do so under principles that are consistent with the First Amendment. *See Widmar v. Vincent,* 454 U.S. 263, 267–68 & n. 5, 102 S.Ct. 269, 273 & n. 5, 70 L.Ed.2d 440 (1981).

The First Amendment standards governing this case are set forth in *Perry Education Association v. Perry Local Edu-*

1. *See, e.g., Clergy and Laity Concerned v. Chicago Board of Education,* 586 F.Supp. 1408 (N.D. Ill.1984), in which the court granted summary judgment in favor of antiwar activists who sought access to the Chicago public school system. That court held that if the schools allowed military recruiters to work on-campus, plaintiffs were entitled to similar access not only to present "information" about legal alternatives to military service, but also to provide "counselling" to students about "draft registration, military service, conscientious objection and legal alternatives to the draft." *Id.* at 1411, 1414.

*cators' Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), and *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* —— U.S. ——, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In those cases, the Supreme Court classified public property used for the exercise of free speech rights into three types of "forums"; the government's power to regulate speech depends on which type of forum is involved.

The first category is the "traditional public forum," such as a street or park. To justify any content-based restriction on speech in a traditional public forum, the government must show that the restriction "is [1] necessary to serve a compelling state interest and is [2] narrowly drawn to achieve that end." *Perry,* 460 U.S. at 45, 103 S.Ct. at 955.

The second category has been termed the "public forum created by government designation," [2] the "limited public forum," [3] or the "created public forum." [4] In this category is public property that, although not historically open to the public for speech, has been intentionally opened by the state as a place for expressive activity. *Perry,* 460 U.S. at 45–46, 103 S.Ct. at 955; *Cornelius,* 105 S.Ct. at 3449. This type of public forum may be designated "for use by the public at large for assembly and speech," [5] or it may be created for a "limited purpose," [6] such as use by certain groups or speakers, or for the discussion of certain subjects. *Perry,* 460 U.S. at 46 n. 7, 103 S.Ct. at 955 n. 7; *Cornelius,* 105 S.Ct. at 3449. The same First Amendment protections apply to these "created public fo-

rums" as apply to traditional public forums: within the boundaries of the public forum or forums created, the government must show that any content-based regulation of speech is "narrowly drawn to effectuate a compelling state interest." *Perry,* 460 U.S. at 46, 103 S.Ct. at 955.

The third category of public property is the "nonpublic forum"—public property that is not a traditional public forum and that has not been opened by the state for public communication. *Perry* held that "the state may reserve the [nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is [1] reasonable and [2] not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* [7]

Plaintiffs do not argue that the school bulletin boards, guidance offices, Career Days and Youth Motivation Days [8] constitute traditional public forums. Instead, they argue that the school system has created public forums by allowing the military and others access to these channels of communication. Plaintiffs further contend that even if no public forums have been created in the schools, defendants' policy is nonetheless unconstitutional because it is an effort to suppress plaintiffs' views.

■ It is undisputed that defendants have permitted various outside organizations to place literature in guidance offices and on bulletin boards and to participate in Career Days and Youth Motivation Days. Defendants themselves point out that mili-

**2.** *Cornelius,* 105 S.Ct. at 3449.

**3.** *See, e.g., Calash v. City of Bridgeport,* 788 F.2d 80, 82 (2d Cir.1986).

**4.** *M.N.C. of Hinesville, Inc. v. United States Department of Defense,* 791 F.2d 1466, 1472 & n. 2 (11th Cir.1986). In *M.N.C.,* the Eleventh Circuit "eschewed" the term "limited public forum" as misleading and, instead, used the term "created public forum" to denote those public places or channels of communication that the government has opened for expressive activity. *Id.*

**5.** *Cornelius,* 105 S.Ct. at 3449.

**6.** *Perry,* 460 U.S. at 46 n. 7, 103 S.Ct. at 955, n. 7.

**7.** *Perry* held that a school's internal mail system fell within this third category and, therefore, that the school system could limit access to its internal mail facilities to one of two competing unions because that union had been selected as the exclusive bargaining agent of the teachers.

**8.** The relevant forum or forums are defined by the access sought by the speaker. *Cornelius,* 105 S.Ct. at 3449. Consequently, for purposes of First Amendment analysis, the relevant forums are not the schools generally, but rather the particular channels of communication to which plaintiffs seek access.

tary recruiters and other organizations seeking to present educational or career opportunities to students have been granted access to these forums. *See* Defendants' "Statement of Undisputed Material Facts" # 4, 5, 6, 10, 12, 13 (filed March 14, 1985 in support of defendants' motion for summary judgment). Moreover, defendants do not argue that they *unintentionally* opened these forums to outside organizations for the dissemination of information about career and educational opportunities. *See Cornelius,* 105 S.Ct. at 3448 (public forums are created only by intentionally opening a non-traditional forum to public discourse). The Court concludes that defendants have created public forums within the schools, at least for the purpose of presenting career and educational opportunities to students.

The scope of the public forums created by defendants may be even broader than described above because it appears that not all outside individuals or groups participating in Career Day programs address educational or career opportunities. *See* Lane Affidavit (filed April 5, 1985, in support of plaintiff's motion for summary judgment). Moreover, it also appears that the Youth Motivation Day[9] program is not designed to provide information about career and educational opportunities. *See* Plaintiffs' "Statement of Undisputed Material Facts" # 21 (filed April 5, 1985, in support of plaintiffs' motion for summary judgment).[10]

Defining the outer bounds of the public forums created, however, is difficult at this stage of the litigation because defendants have not promulgated a written policy setting forth their criteria for granting access to these forums. The Court concludes that it must wait until the facts are developed at trial before it can discern the outer contours of defendants' access policy.

Having determined that defendants have created limited public forums, at least for the purpose of presenting career and educational opportunities to students, the Court turns to the other elements of the *Perry* analysis. Among the printed materials that plaintiffs sought to place in school guidance offices and on bulletin boards were materials describing career and educational opportunities relating to "peacemaking." *See, e.g.,* exhibits B–6, B–7, and B–12 to plaintiff's February 14, 1985 motion for partial summary judgment. Plaintiffs have presented evidence that defendants completely denied plaintiffs access to guidance offices, bulletin boards, and Career Days, and defendants have not controverted this assertion.[11]

Under *Perry,* defendants have the burden of establishing that this restriction of access to these limited public forums was (1) necessary to serve a compelling state interest and was (2) narrowly drawn to

---

9. The present record does not make clear to what extent, if any, plaintiffs have been denied access to Youth Motivation Day programs. Consequently, the Court will not address at this time whether plaintiffs have a First Amendment right of access to these programs. Still, defendants' policy of granting other "outsiders" access to Youth Motivation Days may be relevant in ascertaining the degree to which defendants have opened the other relevant forums to expression by outside entities, especially since plaintiffs allege that there is no difference between Career Days and Youth Motivation Days at some schools.

10. Facts contained in a party's "Statement of Material Facts Not in Dispute," submitted with a motion for summary judgment, must be specifically controverted by the opposing party or they are deemed admitted. Local Rule 220–5(b)(2).

11. *See, e.g.,* plaintiffs' "Statement of Undisputed Facts" # 14, 21, 22 (filed February 14, 1985, in support of plaintiff's motion for partial summary judgment); deposition of defendant Crim at 30; Storey affidavit (filed April 5, 1985, in support of plaintiff's motion for summary judgment).

Defendants' response to plaintiffs' motion for partial summary judgment suggests that defendants have since softened their stance, in that defendants now maintain that plaintiffs' literature would be allowed "in appropriate locations" in the schools if it pertains to scholarship, grant, or career opportunities that plaintiffs have to offer. Defendants' March 14, 1985 Brief in Response at 7. Regardless whether this "revised" policy would be consistent with the First Amendment, *see infra,* any First Amendment violation would have been complete at the time plaintiffs initially were denied access.

achieve that end. 460 U.S. at 45–46, 103 S.Ct. at 955.[12] Defendants, however, have not even articulated any interest that arguably could be considered a compelling state interest under First Amendment doctrine. Defendants attempt to distinguish the career and educational opportunities that plaintiffs seek to present from those which other organizations have been allowed to present as follows:

> Access by outsiders to the Atlanta Public Schools' 22 high schools has accordingly been limited to college recruiters and employers with "jobs in hand." The plaintiffs ... do not seek access ... in order to fill concrete jobs which they are offering to high school students, nor does the Atlanta Peace Alliance seek to provide scholarship monies or grant monies to high school students in order that the students can go on to post high school educational settings.

Defendants' March 14, 1985 brief in support of defendants' motion for summary judgment at 10. The record demonstrates, however, that the "jobs in hand" distinction is a false one. Plaintiffs have presented evidence that at least some Career Day participants do not offer "concrete jobs" and do not have "jobs in hand." *See* Lane affidavit and plaintiffs' statement of "Undisputed Material Facts" # 21 (both filed April 5, 1985, in support of plaintiffs' motion for summary judgment). Defendants have not controverted this evidence. *See* Rule 56(e) (once moving party has submitted evidence which would entitle that party to summary judgment under Rule 56(c), opposing party must respond with evidence showing that there is a genuine issue for trial); Local Rule 220–5(b)(2) (facts not controverted are deemed admitted).

■ More fundamentally, even if the "jobs in hand" distinction accurately describes defendants' access policy, defendants have not even shown a rational basis for this distinction, much less the compel-

ling state interest that *Perry* demands. Some of plaintiffs' literature refers to specific job openings and educational opportunities relating to "peacemaking." Defendants have shown no basis for excluding this material merely because plaintiffs themselves are not the potential employers or providers of educational funds.

■ Nor can defendants' refusal to allow plaintiffs to present career and educational opportunities to students be justified by defendants' purported concern that the schools not be opened to discussions of "any and all ideologies." Even if that concern were deemed a compelling state interest, defendants have made no showing that, to achieve this end, it is necessary to deny plaintiffs the opportunity to present career and educational opportunities relating to peace.

■ Equally unavailing are the arguments of the United States, as intervenor-defendant, that plaintiffs may properly be denied access under *Perry* and *Cornelius*. The United States argues that the recruiting needs of the military constitute a compelling state interest for granting it "preferred" access to these forums. This argument has several flaws. First, there has been no showing that defendants *in fact* would restrict military recruiters' access to these forums rather than grant plaintiffs an opportunity to publicize peace-oriented educational and career opportunities. Instead, the United States' argument seems based on speculation and conjecture. Second, there has been no showing that the military lacks alternative means of contacting high school students; the mere convenience of contacting them at high schools is not a compelling state interest. Third, even if the Court were to accept the United States' argument, defendants' policy would still be unconstitutional because defendants have not shown a compelling state interest

---

**12.** Of course, because this case is now before the Court on cross-motions for summary judgment, Rule 56 imposes additional burdens on the parties to show whether there are any genuine issues as to any material fact and whether any party is entitled to judgment as a matter of law. *See* Rule 56(c), (e), Fed.R.Civ.P.

for granting access to other *nonmilitary* organizations but not to plaintiffs.

Finally, defendants have not shown their policy to be "narrowly drawn." In fact, counsel for defendants has described the "policy" as "only a general philosophical statement." Transcript of February 12, 1986 hearing at 51. It is undisputed that there are no written standards to guide defendant Crim in executing the Board of Education's "policy" for deciding who is allowed access to the Atlanta Public Schools. *See* Plaintiffs' "Statement of Undisputed Facts" # 15 (filed in support of plaintiffs' February 14, 1985 motion for partial summary judgment). Moreover, according to defense counsel, each school principal has the discretion to decide who is permitted access under this unwritten policy, an arrangement that defense counsel conceded could result in a "hundred different interpretations of what the general policy is." Transcript at 35–36. *Cf. Miami Herald Publishing Co. v. City of Hallandale*, 734 F.2d 666, 673–75 (11th Cir.1984) (ordinance vesting "considerable" discretion in public official is not narrowly-tailored).

Consequently, the Court holds that defendants have violated plaintiffs' First Amendment rights by denying them the opportunity to present peace-oriented educational and career opportunities to students by placing literature on school bulletin boards and in the offices of school guidance counselors and by participating in Career Day programs. Plaintiffs are entitled to partial summary judgment on this basis. The Court does not decide whether plaintiffs have a First Amendment right of access to these forums to disseminate other information or whether defendants have acted to suppress the expression of plaintiffs' views merely because they oppose them. Those issues are not appropriate for summary judgment because they may be resolved only after a more complete and thorough development of the facts at trial.

Defendants' failure to promulgate a written policy governing access to these forums leaves defendants in a precarious position for trial. Because it appears that defendants have granted access to outside organizations and individuals for purposes other than presenting educational and career opportunities, after trial the Court may well conclude that the scope of the public forums created by defendants is not limited to the presentation of educational and career opportunities. Without a formal, written policy to look to as evidence of defendants' intentions in opening these forums to outside expression, the Court would have to infer from defendants' actions the outer bounds of the public forums created. Moreover, the absence of a written policy tends to undercut any argument that whatever policy exists is "narrowly drawn." Finally, in light of the events leading up to the denial of access to plaintiffs, defendants' continued failure to promulgate a written policy arguably might be interpreted as evidence that defendants have acted out of an intention to suppress the expression of plaintiffs' views.

This grant of partial summary judgment entitles plaintiffs to an immediate *preliminary* injunction securing plaintiffs' limited right of access to school bulletin boards, guidance offices, and Career Day programs.[13] In the long run, however, devising a new access policy for the Board of Education is a task best left to the Board itself, both in the interest of comity and in deference to the Board's expertise in managing school affairs. For this reason, the Court will allow defendants thirty days from the date of this order to submit a proposed *permanent* injunction that conforms with the terms of this order if they submit at the same time a formal, written policy governing access to the relevant forums in this case. Plaintiffs shall have fifteen days thereafter to respond to the proposed injunction.

**13.** This injunction does not affect access to the Youth Motivation Day programs because, as discussed above, the record is not clear whether plaintiffs have ever sought and been denied access to those programs.

## SUMMARY

The Court (1) GRANTS in part and DENIES in part plaintiffs' April 5, 1985 motion for summary judgment; (2) DENIES plaintiffs' February 14, 1985 motion for partial summary judgment; (3) DENIES defendants' motion for summary judgment; and (4) DENIES intervenor-defendant's motion for summary judgment. In accordance with the terms of this order, defendants are hereby ENJOINED from denying plaintiffs an opportunity, substantially equal to that afforded military recruiters, to present peace-oriented educational and career opportunities to Atlanta public school students by placing literature on school bulletin boards and in the offices of school guidance counselors and by participating in Career Day programs.

The Clerk is DIRECTED to resubmit this case in forty-five days.