**JACKSONBAY BUILDERS, INC.**

v.

**Farhad AZARMI, et al.**

**No. 2004–255–Appeal.**

Supreme Court of Rhode Island.

March 24, 2005.

Richard O. Lessard, Warren, for Plaintiff.

Farhad Azarmi et al., pro se, Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## O P I N I O N

PER CURIAM.

The failure of *pro se* litigants to reject an arbitrator's award within twenty days is the genesis of this appeal. Arguing that

he never was informed that he had only twenty days to challenge the award, the defendant, Farhad Azarmi,[1] appeals from a Superior Court judgment in favor of the plaintiff, Jacksonbay Builders, Inc., for $14,163, plus interest and costs.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised on appeal should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we affirm the judgment entered in the Superior Court.

### Facts and Procedural History

In 1996, Farhad and Lida Azarmi contracted with plaintiff to build a house in North Kingstown.[2] In late June 1997, the Azarmi family moved into this new house. The defendant alleges that at that time there remained numerous problems with the house that plaintiff agreed to correct. The defendant further says that he gave plaintiff a check for $25,000, which he considered payment in full under the contract. On November 25, 1997, however, plaintiff filed a petition to enforce a mechanic's lien against the Azarmis' property. The plaintiff alleged that defendants owed $24,993 for labor and materials that plaintiff furnished in constructing the house. Unfortunately, efforts to resolve the dispute through negotiations proved unsuccessful. According to defendant, however, in 1998 Jacksonbay Builders "removed [the] mechanic [*sic*] lien" upon the payment by defendants of $25,000 into an escrow ac-

---

1. Both Farhad Azarmi and his wife, Lida Azarmi, are named as defendants in the Superior Court action. The record indicates, however, that only one filing fee was paid with the notice of appeal.

2. The record does not contain a copy of this contract.

count accessible only by joint signatures of both parties' attorneys.

There was no activity on the petition until October 2002, when plaintiff filed a motion to assign the case to the continuous trial calendar. The Azarmis filed a *pro se* objection and then, through counsel, a motion to dismiss, alleging lack of personal service. The motion to dismiss was heard and denied by a Superior Court justice on December 16, 2002. Thereafter, the Azarmis, *pro se*, filed a second motion to dismiss on the grounds that the mechanic's lien no longer existed. That motion also was denied.

At a control calendar call on October 2, 2003, the case was "converted to [a] contract case" and referred to court-annexed arbitration. The arbitrator originally selected by the parties asked to be replaced because of a conflict of interest, and James Marusak, Esq., was appointed as the arbitrator. Before the arbitration hearing, the Azarmis filed a counterclaim, and plaintiff filed an amended complaint and an answer to the counterclaim.

An arbitration hearing was held on June 14, 2004,[3] and on June 21, 2004 the arbitrator issued an award. He awarded plaintiff $20,363 on its amended complaint, and awarded the Azarmis $6,200 on their counterclaim. The total award to plaintiff after the set off was $14,163, excluding interest and costs. A copy of the award was mailed to both parties on June 21, 2004, and docketed in the Superior Court file on June 22, 2004.

On July 29, 2004, on a previously scheduled control hearing date, Mr. and Mrs. Azarmi filed an "Objection to arbitration decision" and a motion to assign the matter to the continuous trial calendar. The

trial justice explained to them that Rule 5(a) of the Superior Court Rules Governing Arbitration of Civil Actions (Superior Court Arbitration Rules) provides that a dissatisfied party may file a written rejection of the award within twenty days after the award is filed. In addition, he said that Rule 6(b) of the Superior Court Arbitration Rules provides that if no party files a written rejection within twenty days, the court "shall enter judgment" on the award. In overruling the Azarmis' objection, he ruled that the arbitration award had "ripened into a judgment," and "the court has little alternative but to confirm the arbitration award."

The judgment on the arbitrator's award was entered on July 30, 2004, and execution was issued on August 6, 2004 for $14,163, plus $11,347.47 in interest and $210 in costs, for a total of $25,720.47. The defendant has timely appealed.

## Discussion

In his written submission captioned "brief," defendant reviews the history of his relationship with plaintiff and describes certain problems and defects that allegedly occurred in the construction of the house. In addition, he points out that the letter that he and his wife received from the arbitration office did not explain that they had only twenty days in which to challenge the arbitration award. He contends that they are "victim[s] in this case [who] can't [afford] to hire [a] lawyer and are not familiar with the law." His statement further suggests that this is a "very complicated" case that would justify a deviation from the court rules. He also asserts that he placed $25,000 in escrow in 1998 per agreement of the parties, and argues that, if any interest is to be awarded to plaintiff,

---

**3.** The evidence presented at the arbitration hearing has not been made part of the court record.

it should only be the interest accumulated on that sum while it was held in escrow.

The plaintiff responds that defendant is bound by the rules. It asserts that after the twenty-day period in which to reject the award had elapsed, the Azarmis lost the right to challenge the award. Further, plaintiff contends, they failed to show any excusable neglect that might have warranted an enlargement of time for them to reject the arbitrator's award.

■ Our task on review is to illuminate the meaning and effect of the applicable court rules. We do so on a *de novo* basis. "The interpretation of court rules is a question of law," which we review *de novo*. *Gucfa v. King*, 865 A.2d 328, 331 (R.I.2005) (citing *Cabral v. Arruda*, 556 A.2d 47, 49 (R.I.1989) and *Granoff Realty II Limited Partnership v. Rossi*, 833 A.2d 354, 361 (R.I.2003)).

### Rules Governing Arbitration of Civil Actions

At issue in this case are two of the Superior Court Arbitration Rules. Rule 5(a) provides:

> "*Trial as of Right.* Any party not in default for a reason which may result in judgment by default who is dissatisfied with an arbitrator's award may have a trial as of right upon filing a written rejection of the award on an approved form within 20 days after the arbitrator's award has been filed, or within 20 days after an adverse determination of a Rule 3(j) motion to rehear."

Moreover, Rule 6(b) provides:

> "*Judgment Entered on Award.* If the case is not terminated by agreement of the parties, and no party files a written rejection of the award within 20 days after the award is filed, the court shall enter judgment to include interest and costs, if any, on the arbitrator's award."

We previously have observed that the Rules of Arbitration are intended to "supplement, rather than supersede, the Rules of Civil Procedure." *Astors' Beechwood v. People Coal Co.*, 659 A.2d 1109, 1114 (R.I. 1995). As such, "the Rules of Civil Procedure and the interpretations of those rules are applicable to court-annexed arbitration proceedings." *Id.* at 1113.

A trial justice's authority to extend filing deadlines derives from Rule 6(b) of the Superior Court Rules of Civil Procedure. Rule 6(b)(2) provides in relevant part that "the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."

In the case before us, judgment had not yet entered when the trial justice denied the Azarmis' attempt to reject the arbitrator's award. Rule 58(a) of the Superior Court Rules of Civil Procedure provides "Every judgment shall be set forth on a separate document. A judgment is effective and shall be deemed entered when so set forth and signed by the Clerk." Here, judgment on the award was entered on July 30, 2004, the day after the trial justice overruled the Azarmis' objection to the award.

■ Thus, we conclude that the trial justice did have the discretionary power to permit a late filing of defendants' rejection of the arbitrator's award upon a finding of excusable neglect pursuant to Rule 6(b) of the Superior Court Rules of Civil Procedure. Moreover, as we held in *Astors' Beechwood*, "the deadline for filing a written rejection established in Rule 5(a) of the Rules of Arbitration and the direction that the trial justice enter judgment on the award if no written rejection is filed within twenty days in Rule 6(b) of the Rules of

Arbitration do not restrict the trial justice's discretionary power to enlarge time when the moving party demonstrates the existence of certain conditions." *Astors' Beechwood*, 659 A.2d at 1114 (citing *Pearce v. Lindstrom*, 443 N.W.2d 857, 859 (Minn. Ct.App.1989)).

We need not remand the case for appropriate findings, however. As is abundantly clear from the record, defendants have failed to allege sufficient facts to support a finding of excusable neglect.

### Excusable Neglect

██ "It is well settled that unexplained neglect, whether by a party or its counsel, standing alone, will not automatically excuse noncompliance with orderly procedural requirements." *Astors' Beechwood*, 659 A.2d at 1115 (citing *Iddings v. McBurney*, 657 A.2d 550, 553 (R.I.1995)). "Relief from a [party's] failure to comply with procedural requirements will not be granted 'unless it is first factually established that [the] neglect was occasioned by some extenuating circumstance of sufficient significance to render it excusable.'" *Id.* (quoting *King v. Brown*, 103 R.I. 154, 157, 235 A.2d 874, 875 (1967)). We have explained excusable neglect as "a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party." *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 533 (R.I.2002) (quoting *Daniel v. Cross*, 749 A.2d 6, 9 (R.I.2000) and Black's Law Dictionary 566 (6th ed. 1990)).

In *Pari v. Pari*, 558 A.2d 632 (R.I.1989), we held that "[e]xcusable neglect that would qualify for relief from judgment is generally that course of conduct which a reasonably prudent person would take under similar circumstances." *Id.* at 635 (citing *Clergy and Laity Concerned v. Chicago Board of Education*, 586 F.Supp. 1408, 1410 (N.D.Ill.1984)). In addition, we reiterated our ruling that "the existence of excusable neglect is a question of fact and must be established by evidence." *Id.* In *Pari*, a domestic relations case, we held that a husband's failure to participate in divorce proceedings because he could not afford an attorney and did not know the law did not constitute sufficient evidence to permit a finding of excusable neglect on his part. *Id.* The trial justice's denial of his motion to vacate based on excusable neglect was therefore affirmed. *Id.*

██ Likewise in this case, the Azarmis' failure to file a timely objection to the arbitration award because they were unfamiliar with the law did not present sufficient evidence to warrant a finding of excusable neglect.

In *Coutu v. Porter*, 744 A.2d 405, 406 (R.I.1999) (mem.), the defendants appealed from an entry of judgment after they had failed to reject a court-annexed arbitration award within the appropriate time. They argued that their attorney did not receive a copy of the arbitrator's award and, therefore, did not have notice that the time for filing a rejection had begun to run. *Id.* The attorney took no action until forty days after the arbitration hearing had ended, and then, only in response to a court notice that the time for rejecting the award had expired. *Id.* In rejecting the defendants' argument we held that it was the attorney's responsibility to know the rules and procedures governing arbitration and that a reasonable and prudent attorney would have acted much sooner. *Id.*

██ We are mindful of the fact that the Azarmis represented themselves in the

proceedings below.[4] *Pro se* litigants are often granted greater latitude by the court, although they "are not entitled to greater rights than those represented by counsel." *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I.1987) (citing *Rubin v. Rubin*, 188 N.J.Super. 155, 457 A.2d 12, 14 (App.Div.1982)). It is the right of litigants to represent themselves, although by doing so they assume a very difficult task. *Id.* In the present case, the trial justice, as well as plaintiff's counsel, pointed out that they repeatedly recommended during previous control calendar conferences that Mr. Azarmi procure the help of an attorney. In addition, the trial justice remarked that he had informed defendant before "about the Superior Court Rule in which the arbitration decision ripens into a judgment if it is not objected to timely." Despite these recommendations, the Azarmis chose to represent themselves.

■ "[T]he courts of this state cannot and will not entirely overlook established rules of procedure, 'adherence to which is necessary [so] that parties may know their rights, that the real issue in controversy may be presented and determined, and that the business of the courts may be carried on with reasonable dispatch.'" *Gray*, 522 A.2d at 741 (quoting *O'Connor v. Solomon*, 103 Conn. 744, 131 A. 736, 736 (1926)).

This case is distinguishable from *Security Pacific Credit (Hong Kong) Ltd. v. Lau King Jan*, 517 A.2d 1035 (R.I.1986), in which we set aside a default because we found that the defendants had not acted with gross negligence when they failed to file an answer because of their unfamiliarity with the English language and their lack of understanding of the judicial process. *Id.* at 1037. To set aside an entry of default under Rule 55(c) the only required showing is "good cause" and not the "excusable neglect" required under Rule 60(b) to set aside a judgment by default, or, as here, under Rule 6(b) to enlarge the time for performing an act after the expiration of the time originally prescribed for its performance.

After reviewing the record and submissions of the parties, we are satisfied that the reasons proffered by defendant for failing to comply with the twenty-day filing deadline fall far short of the standard articulated in *Astors' Beechwood*, 659 A.2d at 1115, that the neglect be "'occasioned by some extenuating circumstance of sufficient significance to render it excusable.'" We therefore affirm the judgment on the arbitrator's award.

### Interest

■ The arbitrator specifically excluded interest and costs from his award, stating, "interest and costs are not computed in this award and are to be considered separately and independently of the arbitration process." The judgment entered by the trial justice awarded to plaintiff "$14,163.00 plus interest and costs." Thereafter, on August 6, 2004, execution issued by the clerk "for the sum of $14,163.00 debt/damages, $11,347.47 in interest * * * and $210.00 as costs of suit, as appears of record, for a total amount of $25,720.47 * * *." Although not contesting the clerk's calculations, defendant challenges the award of interest, arguing that any interest should be limited to the amount of interest "accumulated in the bank from 1998" on the $25,000 held in escrow.

---

4. Initially, after the mechanic's lien was placed on the property in 1997, defendants hired an attorney. The defendants were represented by counsel as late as November 2002, when another attorney filed a motion to dismiss this case on their behalf.

Rule 6(b) of the Superior Court Arbitration Rules governing court-annexed arbitration says in pertinent part that "the court shall enter judgment to include interest and costs, if any, on the arbitrator's award." The statutory authority for imposing interest is G.L.1956 § 9–21–10(a):

"In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein."

Moreover, we have "long held that the awarding of [prejudgment] interest is a ministerial act for the clerk of the court, not an issue to be decided by the court." *Cardi Corp. v. State*, 561 A.2d 384, 387 (R.I.1989). We have also recognized, however, that a party may be relieved from the imposition of prejudgment interest under § 9–21–10 by a specific agreement between the parties. *See, e.g., Cabral v. DuPont*, 764 A.2d 114, 116 (R.I.2001) ("the parties['] specific agreement to deposit money into an interest bearing account amounts to an exception to § 9–21–10, thereby relieving the defendant from the pre-judgment interest").

Here, other than Mr. Azarmi's representation, the record is silent about the existence of the escrow account, much less about any specific agreement such as to warrant an exception to § 9–21–10. Presumably, any money in the escrow account may be used to satisfy the execution; however, we discern no reason to disturb the amount of interest that the clerk added to the judgment.

## Conclusion

Accordingly, the judgment of the Superior Court is affirmed and the papers in this case are remanded to the Superior Court.