Emory SEARCEY, et al.,
Plaintiffs-Appellees,

v.

Alonzo CRIM, et al.,
Defendants-Appellants,

United States of America,
Intervenor-Defendant,
Appellee.

No. 86–8681.

United States Court of Appeals,
Eleventh Circuit.

April 17, 1987.

Warren C. Fortson, Bruce H. Beerman, Fortson and White, Atlanta, Ga., for defendants-appellants.

Ralph Goldberg, Atlanta, Ga., for plaintiffs-appellees.

Myles E. Eastwood, Atlanta, Ga., Robert V. Zener, U.S. Dept. of Justice, Civil Div., Washington, D.C., for USA.

Jeffrey O. Bramlett, Bondurant, Mixson & Elmore, Cathleen M. Mahoney, Atlanta, Ga., for Andrews, Presbyterian Church, amicus.

Before VANCE and KRAVITCH, Circuit Judges, and BROWN *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Important questions concerning access to public schools for expressive activity are raised by this case. The district court resolved one of the critical issues at the summary judgment stage by deciding that the Atlanta public schools had created certain "limited" public forums within the schools "at least for the purpose of presenting career and educational opportunities to students." 642 F.Supp. 313. We conclude, however, that this important first amendment issue need not, and should not, have been resolved at this preliminary stage of the proceedings. We affirm, but for reasons other than those given by the district court.

Several individual peace activists[1] and a coalition of organizations known as the Atlanta Peace Alliance (APA)[2] brought this action for declaratory and injunctive relief against defendants/appellants Alonzo Crim, individually and in his official capacity as Superintendent of the Atlanta Public Schools, and the Atlanta Board of Education (Board). The complaint alleged that appellants had violated appellees' first and fourteenth amendment rights by arbitrarily and capriciously denying appellees permission to use established channels in the Atlanta public schools to present information to students concerning peace and educational and career opportunities related to peace. Appellees alleged that appellants' policy and practice was to allow armed forces recruiters and personnel to: disseminate literature through guidance counselors and to post advertisements on high school premises; conduct workshops on high school premises and counsel students as to vocations and careers in the armed forces; and conduct ROTC training in the Atlanta public schools. Despite appellants' policy of allowing armed forces personnel access to the Atlanta schools, appellants refused to grant appellees' requests for similar access rights.[3]

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Plaintiffs include parents of Atlanta public school students, juvenile students of the Atlanta public schools, a teacher in the Atlanta public schools, a minister, a veteran, a former conscientious objector, and other peace activists.

2. The APA is a coalition of organizations and individuals that purport to believe that students in the public schools "are entitled to as much information as they can receive before they make any decision regarding military service."

3. Appellees' complaint alleges that the APA wrote to principals of Atlanta public schools requesting permission:

[T]o place literature concerning military recruiters, military life, draft counseling, conscientious objection and careers as peacemakers in guidance offices ...; set up tables promoting a career as a peacemaker at Career Days and at informal times; speak at forums where pro-military speakers are present; and place paid advertisements in your school's newspaper.

The APA received permission to place paid advertisements in school yearbooks and met with Crim and the Board concerning the other requests. On June 6, 1983, appellant Crim allegedly agreed to allow the APA to place counseling materials in school guidance offices, to set up "Careers in Peacemaking" tables at high school career days, and to provide speakers for the school system. Allegedly in response to an editorial in the *Atlanta Journal* entitled "Don't Peddle Propaganda on School Career Days," Crim wrote to the APA on August 11, 1983, to inform it that the Board had directed him "to suspend all actions related to [Crim's administrative decisions regarding the APA's requests] until the Board of Education Planning Committee can review its related policies." No decision on any policy review has been made by the planning committee and appellees have not been granted their request for access to the schools.

Appellants' primary argument throughout the proceedings has been that their access policies are reasonable regulations of expressive activity in a nonpublic forum. Appellants place primary reliance upon the Supreme Court's decision in *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), applying the Court's forum doctrine in the public school context. The *Perry* Court identified three categories of government property: (1) traditional public forums, which have "by long tradition or by government fiat" been devoted to assembly and debate; (2) designated, created or limited[4] public forums, consisting of property "which the State has opened for use by the public as a place for expressive activity;" and (3) nonpublic forums, which consist of property "which is not by tradition or designation a forum for public communication." 460 U.S. at 45–46, 103 S.Ct. at 954–55.

■ Categorizing public school property as one of these three types determines the standard by which the first amendment claims are evaluated. In traditional and designated public forums, the government may exclude speakers on the basis of the content of their message "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Defense and Educ. Fund,* 473 U.S. 788, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *Perry,* 460 U.S. at 45, 103 S.Ct. at 955. The government may also enforce time, place, and manner restrictions in traditional and des-

ignated public forums if the regulations "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry,* 460 U.S. at 45, 103 S.Ct. at 955. By contrast, control over access to a nonpublic forum "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius,* 105 S.Ct. at 3451. Nevertheless, even in a nonpublic forum, the government violates the first amendment when it denies access to a speaker solely to suppress the point of view he or she espouses on an otherwise includible subject. *Id.; United States v. Belsky,* 799 F.2d 1485, 1489 (11th Cir.1986) (regulation restricting speech in a nonpublic forum must be reasonable and viewpoint neutral). *See also M.N.C. of Hinesville, Inc. v. United States Dep't of Defense,* 791 F.2d 1466, 1474 (11th Cir. 1986) (content-based restrictions imposed in nonpublic forums fall into two categories: those that distinguish between the views of certain speakers and those that do not).

The district court rejected appellants' argument that *Perry* created an "insuperable bar" to appellees' claims and denied appellants' motion to dismiss. After granting the United States' motion to intervene as a party-defendant under Fed.R.Civ.P. 24(b),[5] the court proceeded to consider various motions for summary judgment and partial summary judgment.[6]

Following oral argument on the pending motions, the court granted partial summa-

---

4. As we indicated in *M.N.C. of Hinesville, Inc. v. United States Dep't of Defense,* 791 F.2d 1466, 1472 n. 2 (11th Cir.1986), the "limited" public forum terminology is misleading because "[a]lthough the government, when it turns property from a nonpublic forum into a public one, may do so only for a limited purpose, ... it also may open the forum to the same extent as a traditional forum." Accordingly, this second category of property is best described in terms of "designated" or "created" public forums.

5. The United States alleged an interest in ensuring that military recruiters continue to have access to public schools.

The National Interreligious Service Board for Conscientious Objectors, the Fellowship of Rec-

onciliation, the Jewish Peace Fellowship, the Project on Youth and Non-Military Opportunities, Southeastern Legal Foundation, Inc., and James E. Andrews, Stated Clerk of the General Assembly of the Presbyterian Church, are participating as amicus curiae.

6. Before the court was: (1) appellees' February 14, 1985 motion for partial summary judgment on their claim of access to bulletin boards and guidance counselors' offices; (2) appellants' March 14, 1985 motion for summary judgment; (3) appellees' April 5, 1985 motion for summary judgment on "all remaining claims" in the case; and (4) defendant-intervenor the United States' August 12, 1985 motion for summary judgment.

ry judgment for appellees and denied all other pending motions.[7] The court found that undisputed facts indicated that appellants had "created" public forums within the schools. At this stage of the proceeding, however, the court found that the public forums created were limited in two ways: (1) the created forums for expressive activity were restricted to guidance offices, bulletin boards, and career days; and (2) the subject matter of these designated forums was limited to speech regarding "career and educational opportunities" for students. The court indicated, however, that the "outer bounds" of the public forums created might extend beyond these limitations, but that the court "must wait until the facts are developed at trial before it can discern the outer contours of defendants' access policy."

The court further found that appellants' refusal to permit appellees to present information concerning career and educational opportunities related to peace at career days, and to place such information in guidance offices and on bulletin boards designated for such information, failed scrutiny under the test for regulations of speech in a created public forum. The court concluded that appellants' alleged interest in limiting access to speakers that had "jobs in hand"[8] and in preventing discussions of

"any and all ideologies"[9] did not constitute compelling state interests under the *Perry* test. The court also rejected the United States' argument that the recruiting needs of the military constitute a compelling state interest that justifies granting preferential access to military recruiters and personnel.[10] In addition to finding no compelling state interest supporting appellants' access policy, the court found that the policy was not "narrowly drawn" in that there were no written standards to guide principals of the Atlanta schools in exercising their discretion to determine who will be granted access. Accordingly, the court preliminarily enjoined appellants from denying appellees an opportunity, substantially equal to that afforded military recruiters, to present peace-oriented educational and career opportunities to Atlanta public school students by placing literature on school bulletin boards and in the offices of school guidance counselors and by participating in career day programs.

■ We conclude that the district court should not have resolved at the summary judgment stage the constitutional question of whether appellants created a public forum. Determining what type of public forum exists requires development of the rel-

7. Technically, the court granted in part and denied in part appellees' April 5, 1985 motion for summary judgment. Appellees' February 14, 1985 motion for partial summary judgment was denied. The court also denied appellants' and the United States' motions for summary judgment.

8. The court found that appellants' allegation that access to Atlanta public schools was limited to college recruiters and employers that could themselves offer employment or scholarships to the students was not supported by the record. First, uncontroverted evidence indicated that at least some participants at career days do not offer "concrete jobs" and do not have "jobs in hand." Second, even if the forums had been limited to speakers offering employment, the court found that appellants had no compelling interest in excluding appellees' information concerning specific job openings and educational opportunities related to "peacemaking." Appellants advanced no special interest in excluding this information "merely because plaintiffs themselves are not the potential employers or providers of educational funds."

9. The court concluded that, even if appellants' interest in keeping the schools from becoming a forum for ideological discussions was compelling, appellants "have made no showing that, to achieve this end, it is necessary to deny plaintiffs the opportunity to present career and educational opportunities relating to peace."

10. The court rejected this asserted interest on three grounds. First, the court noted that there had been no proof that appellants would in fact restrict military recruiters' access to these forums rather than grant appellees an opportunity to publicize peace-oriented educational and career opportunities. Second, the court found that the United States had not demonstrated that it lacks alternative means of contacting the students in order to achieve its recruiting goals. Finally, even if the United States' argument concerning the military were true, the needs of the military provide no compelling state interest for sustaining appellants' access policy because undisputed facts indicated that appellants granted access to other nonmilitary organizations but not to appellees.

evant facts that bear upon the character of the property at issue. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983) ("[E]xistence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."); *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985) ("Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum.").

Factual questions remaining in this case preclude determining whether appellants have created any public forums. The district court noted that defining the "outer bounds" of the public forums created "is difficult at this stage of the litigation because defendants have not promulgated a written policy setting forth their criteria for granting access to these forums." The court also admitted that the extent to which appellees were denied access to youth motivation days was unclear on the present record and that appellants' access policy as to those days "may be relevant in ascertaining the degree to which defendants have opened the other relevant forums to expression by outside entities." [11] The factual uncertainties that may have a bearing on the resolution of the legal issues presented counsel against resolving the public forum issues at this stage. *See City of Los Angeles v. Preferred Communica-*

tions, Inc., —— U.S. ——, 106 S.Ct. 2034, 2037, 90 L.Ed.2d 480 (1986) (Court is "unwilling to decide the legal questions posed by the parties without a more thoroughly developed record of proceedings in which the parties have an opportunity to prove these disputed factual assertions upon which they rely.").

■ Moreover, the court's order violates the well established principle of constitutional adjudication that courts should avoid deciding constitutional issues that need not be resolved in order to determine the rights of the parties. *County Court of Ulster County v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). The district court did not need to determine which of the *Perry* forum categories was applicable to this case in order to grant preliminary relief because appellants' refusal to grant the limited access rights at issue [12] fails scrutiny even under a nonpublic forum analysis.

■ As we indicated above, control over access to a nonpublic forum can be based on subject matter and speaker identity "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985). There is little question that appellees' information regarding peace-oriented educational and career opportunities is consistent both with the purposes of allowing information to be placed in guidance counselor offices and on bulletin boards designated for career and edu-

---

**11.** The court indicated that:

[T]he present record does not make clear to what extent, if any, plaintiffs have been denied access to Youth Motivation Day programs. Consequently the Court will not address at this time whether plaintiffs have a First Amendment right of access to these programs. Still, defendants' policy of granting other "outsiders" access to Youth Motivation days may be relevant in ascertaining the degree to which defendants have opened the other relevant forums to expression by outside entities, especially since plaintiffs allege that there is no difference between Career Days and Youth Motivation Days at some schools.

**12.** We note that appellees did not appeal the court's partial denial of their motion for summary judgment. Accordingly, the question of whether appellants might violate the first amendment by refusing to grant appellees access rights extending beyond the limited public forum found by the district court is not before this court. In other words, we do not consider whether appellants might lawfully refuse to permit appellees to engage in first amendment activity that is not limited to disseminating information concerning career and educational opportunities for students at career days and placing such information on bulletin boards and in guidance counselor offices.

cational opportunity information, and with the purposes of school career days.[13] *Cf. Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974); *M.N.C. of Hinesville, Inc. v. United States Dep't of Defense*, 791 F.2d 1466 (11th Cir.1986).

In addition, we agree with the district court that the elusive "jobs in hand" distinction suggested by appellants does not provide a basis for concluding that appellees are not within the class of speakers for whose special benefit the career days were created.[14] *Cf. Perry Educ. Ass'n v. Perry Local Educ. Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Appellants concede that not all participants in school career days themselves offer immediate employment opportunities to students.[15] To suggest that appellees may be excluded on this basis is therefore irrational.

In *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), the Supreme Court held that the government's decision to restrict access to a nonpublic forum "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation," and that reasonableness must be assessed "in light of the purpose of the forum and all the surrounding circumstances." *Id.*, 105 S.Ct. at 3453. Here appellants offer reasons why appellees should not be granted access rights beyond the limited rights at issue in this appeal.[16] Appellants have not, however, suggested any reason for denying appellees the limited access that is at issue here.[17] Absent any suggestion as to why denying these limited access rights was reasonable, excluding appellees from these forums cannot be justified even as a regulation of speech in a

---

**13.** Appellants concede that the purpose of these forums is to provide information to high school students on post-high school career and educational opportunities.

**14.** The "jobs in hand" argument, of course, has no application to appellees' career and educational opportunity information being placed in guidance counselor offices and on bulletin boards dedicated to such information.

**15.** At oral argument appellants suggested that excluding appellees from career days was reasonable, even though appellees sought to present information about career and educational opportunities, because appellees might not be knowledgeable about the opportunities they sought to describe. Appellants have, however, presented no evidence to indicate that appellees lack sufficient knowledge to answer student questions about the career and educational opportunities, or that appellees are less knowledgeable about the career and educational opportunities that they seek to discuss than are other career day participants.

Appellants' concern that the district court's injunction in this case will force appellants to allow individuals to participate in career days who have no knowledge about the careers and educational opportunities they present to students is ill-founded. First, if a career day participant were to use career and educational information as a mere pretense to gain admission to career days so they could engage in "political debate," the injunction does not prevent appellants from excluding the participant because he or she has exceeded the scope of the forum. Second, if appellants are concerned about ca-

reer day participants lacking sufficient knowledge about the career and educational information they are presenting, the injunction is not a barrier to appellants imposing reasonable, content neutral manner regulations on *all* career day participants to ensure that the participants will have sufficient knowledge about the information they will disseminate to students.

**16.** For example, appellants argue that appellees seek to disseminate a large number of documents concerning "political debate and discussion of the merits of military careers and the draft," and that allowing such information in the Atlanta schools would be disruptive. Although appellees may indeed wish to disseminate such information, these issues are not before the court in this appeal.

**17.** Appellees' appear to be correct in their assertion that appellants are "softening" in their opposition to this information. At oral argument and in their brief to this court, appellants admit that school guidance offices, bulletin boards, and career days are open "to those who disseminate specific information regarding job and post-high educational opportunities."

We find no error, however, in the district court's conclusion that it is undisputed that appellants did deny appellees permission to place career and educational information in guidance offices and on bulletin boards and that appellees were not allowed to participate in career days. As such, partial summary judgment and injunctive relief were still appropriate because, as the district court found, "any First Amendment violation would have been complete at the time plaintiffs initially were denied access."

nonpublic forum.[18] Accordingly, the district court need not have determined which type of *Perry* forum appellants had created because excluding appellees was not justifiable regardless of which type of forum was involved.

In light of our analysis above, we conclude that the district court properly granted partial summary judgment and limited preliminary injunctive relief for appellees. We therefore affirm the relief granted in the district court's order. The portion of the court's order declaring that appellants have created a limited public forum, however, is vacated and the case is remanded for further proceedings.

AFFIRMED in part; VACATED in part; and REMANDED.

---

18. We do not reach the issue of whether appellants denied access to appellees in order to suppress their viewpoints. The parties agree that factual uncertainties prevent resolution of this issue at the summary judgment stage.