**John CALASH, d/b/a Paradise Productions, Plaintiff-Appellant,**

v.

**CITY OF BRIDGEPORT, Parks Superintendent, Richard Porto, Commissioner Ralph J. Innacell, Commissioner Daniel Piccollelo, Commissioner Anthony Post, Commissioner Ernest Amaral, Commissioner John Lesko, Commissioner Philip Crisanti, Commissioner Joseph Verilli, and Commissioner Enrique Vazquez, Defendants-Appellees.**

No. 722, Docket 85–7851.

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1986.

Decided April 14, 1986.

Samuel S. Linderman, Stamford, Conn. (Linderman & Mastronardi, Gary A. Mastronardi, of Counsel), for plaintiff-appellant.

Raymond B. Rubens, Asst. City Atty., Bridgeport, Conn., for defendants-appellees.

Before FEINBERG, Chief Judge, MANSFIELD and CARDAMONE, Circuit Judges.

FEINBERG, Chief Judge:

John Calash, d/b/a Paradise Productions, appeals from an order of Judge Ellen

Bree Burns of the United States District Court for the District of Connecticut, which denied his application for a preliminary injunction. Calash, a concert promoter, sought access to Kennedy Stadium, a facility controlled by the City of Bridgeport's Parks and Recreation Board (the Board). The district court found that the facility was not a public forum and that, in any event, appellant had not made the requisite showing of irreparable injury. Because we believe that recent Supreme Court decisions compel the conclusion that on this record the district court reached the correct result, we affirm Judge Burns' denial of preliminary injunctive relief.

## I. Background

Appellant Calash is a professional concert promoter who has staged rock concerts throughout southern Connecticut. He first sought permission to use Kennedy Stadium for a Beach Boys concert in the summer of 1983. The proposed concert was designed as a profit making venture. The Board denied his application, citing its policy restricting use of the facility to civic, charitable and non-profit entities. In May 1985, Calash again applied for permission to hold concerts at Kennedy Stadium. He appeared before the Board on June 11 and presented his proposal. The proposal indicated that the concerts would benefit the Beardsley Park Zoo. The Board reserved decision in order to study the matter further. On June 17, the Board informed Calash that his application was denied without prejudice to renewal if he provided the Board with information about his finances and prior experience and the arrangement with the zoo. Instead of following this course, Calash chose to sue, as indicated below.

Kennedy Stadium, the facility in question, is a large, outdoor arena, located on parkland adjacent to a public high school. It was built with funds provided by a federal grant and is used primarily for football and soccer. It is also used for the City's annual Barnum Festival and for such events as drum corps exhibitions. The stadium has been used for at least one rock concert: in the summer of 1984, Dennis Dean, director of the Klein Memorial Auditorium (a City-owned theater), obtained permission to use the facility for a Beach Boys concert to benefit the Klein Memorial and various charitable organizations. Because the City was unwilling to advance the funds for the concert, a private corporation assumed the financial risk in exchange for thirty percent of the profit from concessions. In May 1985, the Board announced that Dean had permission to hold a series of concerts at Kennedy Stadium. The district court noted that, as of July 11, no concerts were scheduled; the record does not indicate whether any concerts were in fact held.

In August 1984, Calash sued the City and individual Board members, seeking damages and a permanent injunction. He claimed that his exclusion from Kennedy Stadium violated state and federal antitrust law and denied him the equal protection of the laws. After the Board denied his second application in June 1985, Calash amended his complaint to include a first amendment claim. He also moved for a preliminary injunction requiring defendants to make Kennedy Stadium available to him on "fair and equal terms." The district court held a hearing on his motion for preliminary relief and denied it on August 7.

The district court concluded that, based on the Board's policy restricting use of the facility to civic, charitable and non-profit organizations, Kennedy Stadium was a non-public forum under *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Although the district judge found that lack of written guidelines, coupled with the Board's rejection of Calash's application "without prejudice," raised fair grounds for litigation of the public forum issue, she held that Calash failed to establish irreparable injury. Viewing the relief sought as limited to two concert dates in the summer 1985 concert season, Judge Burns found that "granting plaintiff the relief he requests ... at this

date would not serve to protect him from the irreparable harm he claims he will suffer." The district court denied Calash's motion for reconsideration. This appeal followed.

## II. First Amendment Claim

As a preliminary matter, we recognize that musical entertainment is a form of protected speech. See *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981) (live entertainment); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 567 (9th Cir. 1984), cert. denied, — U.S. —, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985) (rock music). That appellant seeks to make a profit does not deprive him of the protection of the first amendment. See *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978). However, recognition that protected speech is involved only begins the inquiry, since "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense and Education Fund*, — U.S. —, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985).

### A. *Public Forum Doctrine*

Whether a city can, consistent with the first amendment, exclude profit making entities from a municipal facility appears to be a matter of first impression. However, the validity of the City's limited access policy depends largely on the classification of the public property involved. In its two most recent decisions on public forum doctrine, *Perry*, supra, and *Cornelius*, supra, the Supreme Court has defined three categories of public property: the traditional public forum, including public streets and parks, dedicated to assembly and debate by "tradition or by government fiat," *Perry*, 460 U.S. at 45, 103 S.Ct. at 954; the limited public forum, which the government has designated as "a place or channel of communication for use by the public at large ... [or] for use by certain speakers, or for the discussion of certain subjects," *Cornelius*, 105 S.Ct. at 3449; and the nonpublic forum, which is not "by tradition or desig-

nation a forum for public communication," *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. The right to access to government property and the standards by which limitations on access must be evaluated vary according to the classification. *Id.* at 44, 103 S.Ct. at 954.

In the first category, the government must show that a content-based exclusion is necessary to serve a compelling state interest and narrowly drawn to achieve its purpose. *Id.* at 45, 103 S.Ct. at 954. The government can also impose narrow, content-neutral time, place and manner restrictions to serve a significant interest, so long as there remain adequate alternative channels of communication. *Id.* With regard to the second category, although the government can close a limited public forum altogether, the Supreme Court noted that when the forum remains open to the public as a whole it is governed by the same standards as the traditional public forum. *Id.* at 46, 103 S.Ct. at 955, citing *Widmar v. Vincent*, 454 U.S. 263, 269–70, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). When the government, however, creates a limited public forum for the use of certain speakers or for the discussion of certain subjects, the first amendment protections provided to traditional public forums only apply to entities of a character similar to those the government admits to the forum. *Perry*, 460 U.S. at 48, 103 S.Ct. at 956; *Cornelius*, 105 S.Ct. at 3449. In the third category, the government can "reserve the forum for its intended purposes, communicative or otherwise" through reasonable restrictions on expression, so long as the regulations are not based on hostility to the speaker's views. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Indeed, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." *Id.* at 49, 103 S.Ct. at 957. In *Perry*, the Court found a school's internal mail system was a nonpublic forum and a policy restricting access to the exclusive representative of the teachers was reasonable. In *Cornelius*, the court also classified a charitable campaign as a nonpublic forum and upheld

exclusion of legal defense funds and advocacy groups as reasonable, although it remanded on the issue of viewpoint-neutrality.

### B. Application of Public Forum Doctrine to Kennedy Stadium

Appellant does not argue to us that Kennedy Stadium is a traditional public forum. Rather, he contends that, because the facility has been used for the type of expression he seeks to promote and is open to any non-profit group to hold concerts, the City has created a public forum and the property falls within the Supreme Court's second category in *Perry* and *Cornelius*. Appellant further argues that the City's policy denies profit making entities the right to convey their message, see *Cinevision Corp. v. City of Burbank*, supra, and ignores the vital role of the concert promoter in the dissemination of musical expression. He claims that the first amendment rights of the public audience are also infringed by the City's policy.

█ Applying the analysis set forth in *Perry* and *Cornelius*, however, we agree with the district court that Kennedy Stadium is a nonpublic forum. It is true that the expressive activity is not incompatible with the property's principal function as a sports arena, see *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975), but not every possible vehicle for communication is a public forum. See, e.g., *Cornelius*, supra (charitable campaign and its attendant literature); *Perry*, supra (school mail system); *United States Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981) (mail box). Both *Perry* and *Cornelius* stress the government's intent in establishing the forum as being critical to a finding that it has created a limited public forum. In *Cornelius*, for example, the Court stated that

> [t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse.

105 S.Ct. at 3449; see also *id.* at 3450 ("We will not find that a public forum has been created in the face of clear evidence of contrary intent...").

Under this approach, the circumstances under which the forum was created here show that the City did not intend to open Kennedy Stadium to the general public for all uses or permit its use as a profit making venture. The facility was constructed with funds provided by a federal grant and designated as a "service facility." This case is distinguishable from *Cinevision Corp. v. City of Burbank*, supra, 745 F.2d at 570, on the issue of intent. In *Cinevision*, the court found that, by granting a corporate promoter access to a municipal amphitheater to stage a series of public concerts, the City of Burbank had created a public forum. Compare also *Southeastern Promotions*, supra, 420 U.S. at 555, 95 S.Ct. at 1245 (municipal theater considered public forum).

Past use of Kennedy Stadium provides further evidence of intent contrary to the creation of a public forum. As the district court found, the facility has not been held open to the general public.[1] Selective access by civic, charitable and non-profit organizations cannot be equated with "indiscriminate use by the general public." *Perry*, 460 U.S. at 47, 103 S.Ct. at 956. See generally *id.* at 47–48, 103 S.Ct. at 956 (selective access by civic and church groups does not convert property into public forum); *Greer v. Spock*, 424 U.S. 828, 838 n. 10, 96 S.Ct. 1211, 1217 n. 10, 47 L.Ed.2d 505 (1976) (occasional use by civilian speakers and entertainers does not transform mili-

---

1. Appellant appears to argue that, because financing for the Beach Boys concert in May 1984 was provided by a private, profit making corporation, the Board has opened the stadium to profit making groups generally. As the district court found, however, this ignores the fact that the primary beneficiary of the concert was the Klein Memorial · Auditorium, a municipal organization. We agree with Judge Burns that this does not establish the City's failure to follow its own policy.

tary base into public forum); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 304, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (plurality opinion) (rental of space to commercial advertisers does not require City to accept political advertising on buses). We agree with the district court that "if a municipality chose to open a public school auditorium to a local, non-profit community theater group, the municipality would [not] then be required to make the auditorium available to any private entertainment promoter."

Even if we were to find that the City created a limited public forum by allowing non-profit groups to use Kennedy Stadium, appellant would not necessarily be entitled to access. As already noted, the most recent Supreme Court decisions indicate that a public forum can be created for use only by certain speakers or for discussion of certain topics, see *Perry*, 460 U.S. at 46 n. 7, 103 S.Ct. at 955 n. 7; *Cornelius*, 105 S.Ct. at 3449. Under those circumstances, any right of access would only extend to "entities of similar character." *Perry*, 460 U.S. at 48, 103 S.Ct. at 956. In this case, if Kennedy Stadium were considered a limited public forum, the City has consistently designated it for use only by civic, charitable and non-profit speakers. Although concerts have occasionally been held at the stadium, they have been promoted by non-profit organizations. Limited past use of this sort does not support appellant's contention that the facility has become a limited public forum for this particular form of expression, no matter who the speaker; as to speakers who are not members of the class for whose benefit the forum was created, Kennedy Stadium would remain a nonpublic forum.

C. *Whether the Board's Policy is Reasonable and Viewpoint-Neutral*

■ Classification of Kennedy Stadium as a nonpublic forum does not end the inquiry, of course. As indicated above, restrictions on access to a nonpublic forum must be viewpoint-neutral and reasonable in relation to the forum's purpose. We

consider the Board's policy limiting use to civic, charitable and non-profit organizations reasonable in light of the stadium's intended use as a service facility. We agree with Judge Burns that it is not irrational for a city "to support such organizations by making municipal facilities available to them on a limited basis." The fact that the Board's policy makes distinctions on the basis of speaker identity does not render it unconstitutional. See *Cornelius*, 105 S.Ct. at 3451. Distinctions based on speaker identity are permitted in a nonpublic forum, see, e.g., *Cornelius*, 105 S.Ct. at 3453 (distinction between charitable agencies providing direct services and legal defense and political advocacy organizations considered reasonable); *Perry*, 460 U.S. at 50–53, 103 S.Ct. at 958–59 (exclusion of rival union reasonable); *Lehman*, supra, 418 U.S. at 304, 94 S.Ct. at 2717 (distinction between commercial and political advertising also reasonable).

Although appellant implies that the limited access policy is a pretext for hostility to certain types of rock music, the record does not support such a conclusion. As the district court found, concerts featuring rock music had been held at the stadium in the past. In making his argument that the facility should be classified as a public forum, Calash admits that, if he were willing to forego a profit, he would be allowed to use Kennedy Stadium to stage rock concerts. Thus, this case is also distinguishable in this important respect from *Cinevision*, supra, 745 F.2d at 571–72, where the court found that the City's exclusion of certain performers was based on antipathy to "hard rock" music. The district court's finding that there are alternative concert forums available also supports the reasonableness of the Board's policy.

■ We have found that the public property at issue, Kennedy Stadium, is a nonpublic forum where the City may make reasonable restrictions on expression. Its policy of limiting access to civic, charitable and non-profit organizations is such a reasonable restriction. Accordingly, we conclude that the preliminary injunction

was properly denied because appellant failed to demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardship tipping decidedly in his favor. See *Coca Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982).

As noted above, the district court found that appellant had raised a serious question going to the merits, because the lack of written guidelines and the denial of his application "without prejudice" created the inference that the Board was no longer applying its limited access policy. In light of appellant's statement in his brief that the City has adopted written guidelines clearly setting forth a policy prohibiting use by profit making entities, we find that no serious question remains. Since appellant has not shown either a substantial likelihood of success on the merits or serious questions going to the merits, we need not reach the issue of irreparable injury.