927 F.2d 688
 66 Ed. Law Rep. 75
 Toby TRAVIS, Youtharama Northeastern Pennsylvania's Youth
for Christ, Inc., and Cindy Bezek, in her official
capacity as Co-Director of Birthright of
Owego, Inc., Plaintiffs-Appellees,
v.
OWEGO-APALACHIN SCHOOL DISTRICT and Charles Tyo, in his
official capacity as President of the Board of
Education for Owego-Apalachin Schools,
Defendants-Appellants.
 No. 675, Docket 90-7689.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 5, 1990.
Decided Feb. 28, 1991.
 
 John B. Hogan (Hogan & Sarzynski, Binghamton, N.Y., of counsel), for Defendants-Appellants.
 Mark N. Troobnick (Jordan W. Lorence, Concerned Women for America Legal Foundation, Washington, D.C., David Rollinson, Syracuse, N.Y., of counsel), for Plaintiffs-Appellees.
 Jay Worona, Cynthia Plumb Fletcher, Albany, N.Y., for amicus curiae, New York State School Boards Ass'n, Inc.
 Before JON O. NEWMAN and WINTER, Circuit Judges, and DALY, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This case involves a public school district's denial of an application to use a school auditorium for a fund-raiser with a religious theme. The school district has, through past practice, created either a limited public forum or designated public forum. That past practice included an openly religious fund-raiser. The district has failed to offer a sufficient justification for the denial in the instant matter; that denial therefore violated the free speech clause of the First Amendment and the equal protection clause of the Fourteenth Amendment.
 
 BACKGROUND
 
 2
 This appeal arises from a district court decision based on cross-motions for summary judgment. The pertinent facts are drawn from a stipulation and affidavits and are undisputed.
 
 
 3
 New York Education Law Section 414 ("Section 414") provides that local boards of education in that state may open school facilities to the community for various educational, civic, recreational, and social purposes.[1] Users must open their programs to the general public, see N.Y.Educ.Law Sec. 414(1)(c), but may charge an admission fee if the proceeds go to a charitable cause that is not a religious, fraternal or exclusive organization, see id. Sec. 414(1)(d).
 
 
 4
 Appellant Owego Apalachin Central School District ("School District") has promulgated a written policy for community use of its school facilities. Under this policy, organizations seeking to use School District facilities must apply for a permit from the Supervisor of Facilities, who must approve or deny an application within ten days. Denials may be appealed to the Superintendent of Schools, whose decision is final. Also, the School District imposes a rental fee for facility uses that charge an admission fee. The rental fee for the use of an auditorium is $50.00.
 
 
 5
 Pursuant to this policy, the School District has issued numerous permits for the use of the auditorium at the Owego Apalachin Middle School ("Middle School"). For example, the Tioga County Council on the Arts has sponsored many free events in the auditorium, including jazz and pop music concerts, dance performances, a puppet show, and a magic act. Other free events have included a recital by the Kathy Hansen School of Dance and a concert sponsored by the Tioga County Historical Society. The School District also has issued permits to use the Middle School auditorium for fund-raising events. In December 1986, an organization called "On the Level Music!" presented a Christmas program in the auditorium, the admission fee being one new toy to be donated to a needy child in the area. In September 1988, Historic Owego Marketplace, Inc. sponsored a concert by folk singer Noel Paul Stookey, the proceeds from which were applied toward the purchase and preservation of an area known as Hiawatha Island.
 
 
 6
 In February 1989, appellee Birthright of Owego, Inc. ("Birthright"), a non-profit "pro-life" pregnancy counseling organization, requested permission to use the Middle School auditorium for a fund-raising event. On its application form, Birthright proposed to sponsor a magic show by illusionist Toby Travis to raise money for Birthright's counseling center. The application indicated that Travis was a "representative for" Youtharama Northeastern Pennsylvania's Youth for Christ, Inc. ("Youth for Christ"), a non-profit and tax-exempt Pennsylvania corporation that promotes Christian gospel evangelism. Birthright originally requested a June 1989 performance date. Robert Allen, Supervisor of Facilities, approved the application.
 
 
 7
 In April, Birthright telephoned Allen, seeking to change the performance date to September 22, 1989, because the June date coincided with a local strawberry festival. Allen informed Birthright that the School District would consider the matter. On May 12, Allen notified Birthright that the School District had decided to deny the application because the Toby Travis performance would involve "religious and/or political activity"[2] and therefore violate state law and School District policy.
 
 
 8
 Thereafter, Travis, Youth for Christ, and Birthright (collectively "Travis") filed this civil rights action in the Northern District seeking declaratory and injunctive relief pursuant to 42 U.S.C. Sec. 1983 (1988). The amended complaint contained four counts. The first alleged that the School District violated Travis's First and Fourteenth Amendment rights to freedom of speech and assembly by denying use of "the auditorium that is an open forum for use by a wide variety of organizations." The second count alleged discrimination on the basis of religion in violation of the equal protection clause of the Fourteenth Amendment. The third count claimed that the School District impermissibly burdened Travis's First Amendment right to free exercise of religion. In the fourth, Travis alleged that by permitting other groups to use the auditorium but disallowing him from doing so because of the religious content of his speech, the School District fosters a policy that "prefers nonreligion over religion" in violation of the establishment clause of the First Amendment.
 
 
 9
 Judge McAvoy granted plaintiffs' motion for summary judgment on the first and second counts and granted defendants' motion on the third and fourth causes of action. Addressing the free speech claim, he found that the School District had created in the Middle School auditorium a "limited public forum" open to uses such as that proposed by Birthright. Ruling that the School District had failed to articulate a compelling state interest in, or even a rational basis for, excluding Travis from that forum, Judge McAvoy found a First Amendment violation. Similarly, he held that the School District's express discrimination against plaintiffs based on the religious content of their program violated the equal protection clause under both the strict scrutiny and rational basis tests. He also noted that the denial may not have been viewpoint-neutral, in light of the permission given for a religious Christmas program, but found no need to reach that issue in light of his ultimate disposition of the case on other grounds. Judge McAvoy dismissed the third and fourth counts, finding neither a substantial impact on plaintiffs' ability to exercise their beliefs nor an active involvement by the state in religious affairs.
 
 
 10
 Accordingly, Judge McAvoy permanently enjoined the School District from denying plaintiffs access to the Middle School auditorium for any reason inconsistent with his decision. The School District appeals from that judgment. We affirm the grant of summary judgment but modify the order somewhat.
 
 DISCUSSION
 
 11
 The First Amendment, applicable to the School District through the Fourteenth Amendment, does not guarantee unlimited access to government-owned property for purposes of expression. Government may thus properly regulate such access depending on the nature of the property at issue. See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 799-800, 105 S.Ct. 3439, 3447-48, 87 L.Ed.2d 567 (1985). In analyzing governmental restrictions on expressive activity, the Supreme Court has defined three categories of public property, see Cornelius, 473 U.S. at 802, 105 S.Ct. at 3448; Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983), and determines the right of access according to the category in which the particular property falls. See Perry, 460 U.S. at 44, 103 S.Ct. at 954; see also International Society for Krishna Consciousness v. Lee, 925 F.2d 576, 579-80 (2d Cir.1991); Paulsen v. County of Nassau, 925 F.2d 65, 68-69 (2d Cir.1991).
 
 
 12
 The first category is the "traditional public forum," such as a street or a park, places that " 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " Id. at 45, 103 S.Ct. at 954 (quoting Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939)). In traditional public forums, government may not ban all expressive activity. It may enforce a content-based exclusion only when the regulation is "necessary to serve a compelling state interest" and is "narrowly drawn to achieve that end." Id. Government may also impose content-neutral time, place, and manner restrictions again only if the regulations are "narrowly tailored to serve a significant government interest" and "leave[ ] open ample alternative channels of communications." Id.
 
 
 13
 The second category, the "nonpublic forum," property that is not open by tradition to the public for communication, is governed by less stringent standards. Government is entitled to preserve the intended purpose of such property. See United States v. Kokinda, --- U.S. ----, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). In nonpublic forums, government may enforce both time, place, and manner restrictions and "reasonable" content-based regulations on speech. However, it may not suppress expression merely because it opposes the speaker's point of view. See Perry, 460 U.S. at 46-47, 103 S.Ct. at 955-56.
 
 
 14
 The third category, the "designated public forum," consists of property that would be a nonpublic forum except for the fact that government has intentionally opened it for use by the public for expressive activity. See Cornelius, 473 U.S. at 802, 105 S.Ct. at 3449; Perry, 460 U.S. at 45, 103 S.Ct. at 954. Although not required to open the forum in the first place, or to keep it open indefinitely, government is bound by the same standards as apply to a traditional public forum, so long as it maintains the designated public forum. See Perry, 460 U.S. at 46, 103 S.Ct. at 955.
 
 
 15
 In applying these categories, we have identified a sub-category of the designated forum that we have styled the "limited public forum." It is created when government opens a nonpublic forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects. See, e.g., Deeper Life Christian Fellowship v. Board of Educ., 852 F.2d 676, 679 (2d Cir.1988); Calash v. City of Bridgeport, 788 F.2d 80, 82 (2d Cir.1986). In the case of a limited public forum, constitutional protection is afforded only to expressive activity of a genre similar to those that government has admitted to the limited forum. See Calash, 788 F.2d at 82. Thus, in a limited public forum, government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre.
 
 
 16
 In the instant matter, the parties agree that Travis's proposed activity is among the kinds of expression generally protected by the First Amendment. However, the School District argues that through Section 414, its own community use policy, and past practice, it has created in the Middle School auditorium a limited public forum that is not open to religious expression. To bar Travis as part of a blanket exclusion on religious speech, it argues, is a constitutionally valid means to avoid both controversy and excessive entanglement between church and state.
 
 
 17
 We need not address the question of whether the School District has created only a limited public forum, rather than a designated public forum used for indiscriminate expressive activity by the public at large. See Cornelius, 473 U.S. at 802, 105 S.Ct. at 3448. Travis's program was the same type as a previously permitted use. Even if the forum was limited, Travis, being within the category for which use had been permitted, could not be denied access absent a sufficient constitutional justification. No such justification has been proffered. Though occasional prior use might not suffice to establish a designated public forum open to all, see Kokinda, 110 S.Ct. at 3121, Calash, 788 F.2d at 83, such use will result in a forum designated for the limited category exemplified by the prior permitted use.
 
 
 18
 In December 1986, the School District permitted the Middle School auditorium to be used for a religious Christmas program. At oral argument, the School District sought to distinguish the granting of access for the Christmas program from the denial of Birthright's application on the ground that the School District did not anticipate that the Christmas program would have a religious theme. It based this somewhat curious argument on the fact that Birthright's application explicitly mentioned Youth for Christ whereas On the Level Music!'s application simply stated "Christmas program." Putting aside the lack of any affidavit or stipulation stating that such a misunderstanding actually occurred, we are unpersuaded that mentioning a Christian organization on an application reasonably arouses more suspicion about a potential religious use than does a statement that a proposed program will celebrate Christmas. To be sure, a Christmas program may focus only on secular aspects of the holiday, but there was nothing in the application for that program that indicated such a limited content.
 
 
 19
 Moreover, the Christmas program was in fact openly religious and intended to celebrate the birth of Jesus as well as to collect toys for needy children. It was entitled "A Concert For the King--Christmas in Owego" and consisted of twelve Christian hymns and a Bible reading by the Mayor of Owego. Birthright likewise sought to raise contributions for a charitable purpose through religiously oriented entertainment. If anything, Travis's program, an ordinary magic show followed by a short message promoting the Christian gospel, would have been less religious in tone and content than the Christmas program.
 
 
 20
 Even if the School District genuinely misunderstood the nature of the proposed Christmas program when viewing the application, it is now charged with the knowledge that the program was an openly religious affair. There is no evidence in the record that the School District, having learned that it had mistakenly permitted a religious program in violation of its policy, took steps to prevent a similar mistake in the future, and that such corrective measures caused the denial of Birthright's application. Counsel for the School District could assure us only that he would, if asked, advise in the future against use of the auditorium for another Christmas program, but could not guarantee that the School District would heed his advice.[3]
 
 
 21
 The Christmas program thus created at least a limited public forum for fund-raisers with religious themes. Judge McAvoy found it unnecessary to reach the question of whether Travis was excluded because of his religious viewpoint. He did, however, indicate that relief might be justified on the ground of discrimination among viewpoints and noted that the School District's inconsistent positions suggested "comfort with mainstream religious views and discomfort with and perhaps hostility towards non-mainstream, non-traditional religious messages." Whether or not such a subjective view did cause the Travis denial, the School District was obligated to be even-handed in administering its policies concerning access. Permitting a fund-raiser with a religious theme while excluding one with a different religious theme is not viewpoint-neutral as a matter of law, absent a constitutionally sufficient explanation for the differential treatment. No such explanation has been offered in the instant matter.
 
 
 22
 The School District claims that it denied access to Travis in order to avoid an entanglement between church and state. That rationale, however, equally would have precluded the Christmas program. Moreover, having an open-door policy that happens to allow religious speech does not "endorse" or "establish" a religion. See Widmar v. Vincent, 454 U.S. 263, 270-75, 102 S.Ct. 269, 274-77, 70 L.Ed.2d 440 (1981), see also Board of Educ. v. Mergens, --- U.S. ----, 110 S.Ct. 2356, 2370-73, 2377-78, 110 L.Ed.2d 191 (1990) (plurality and concurring opinions). Nor is the exclusion justified by the supposedly "controversial" nature of Travis's message. Potential controversy is not a permissible basis on which to deny access to a designated or limited public forum where less controversial speakers on the same subject are admitted.
 
 
 23
 Given the past practice of the School District and the failure to reconcile in a constitutionally sufficient manner the allowance of a Christmas program and the denial of access to Travis,[4] we conclude that the School District's conduct is not viewpoint-neutral and is unconstitutional. We thus affirm the district court's grant of summary judgment to appellees on the free exercise and equal protection claims. However, we do not reach the question of whether the School District can exclude all religious speech from the auditorium. Because the District's present policy is to treat applicants whose programs have religious themes on a discriminatory ad hoc basis, that issue is not ripe. The injunction therefore must be modified. It should prohibit a denial of access to the auditorium to Travis unless the School District expressly adopts a new policy that treats all programs with a religious theme equally. If constitutional issues arise from such a policy, they can then be resolved.
 
 CONCLUSION
 
 24
 For the foregoing reasons, the grant of summary judgment is affirmed. The case is remanded for a modification of the injunction consistent with this opinion.
 
 
 
 *
 The Honorable T.F. Gilroy Daly, United States District Judge for the District of Connecticut, sitting by designation
 
 
 [1]
 In pertinent part, Section 414 reads:
 
 
 [1]
 Schoolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district. The trustees or board of education may adopt reasonable regulations for the use of such schoolhouses, grounds or other property, all portions thereof, when not in use for school purposes or when the school is in use for school purposes.... for such other public purposes as are herein provided ...:
 (a) For the purpose of instruction in any branch of education, learning or the arts.
 ....
 (c) For holding social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community; but such meetings, entertainment and uses shall be non-exclusive and shall be open to the general public.
 (d) For meetings, entertainments and occasions where admission fees are charged, when the proceeds thereof are to be expended for an educational or charitable purpose; but such use shall not be permitted if such meetings, entertainments and occasions are under the exclusive control, and the said proceeds are to be applied for the benefit of a society, association or organization of a religious sect or denomination, or of a fraternal, secret or exclusive society or organization other than organizations of veterans of the military, naval and marine service of the United States and organizations of volunteer firefighters or volunteer ambulance workers.
 ....
 (f) For civil forums and community centers.
 ....
 
 
 [2]
 The trustees or board of education shall determine the terms and conditions for such use which may include rental at least in an amount sufficient to cover all resulting expenses for the purposes of paragraphs (a), (b), (c), (d), (e), (g) and (i) of subdivision one of this section
 N.Y.Educ.Law Sec. 414 (McKinney 1988 & Supp.1991).
 
 
 [2]
 The stipulation of facts states that denial of the request for use of the auditorium was grounded on the fact that Travis "would engage in religious and/or political activity." At oral argument, both counsel were questioned as to whether the reference to "political" activity concerned Birthright's position on the abortion issue. After some hesitation, both counsel agreed that the denial was solely on religious grounds
 
 
 [3]
 The School District argues that it has not opened the auditorium to religious speech because it has excluded another religious use in denying an application by the Owego Southern Baptist Church to use the auditorium for three consecutive nights to host a youth choir and conduct a worship service. The Baptist program was to have been promoted as an "area-wide crusade" and would have entailed the actual practice of a religion, including formal religious services. This, we believe, is perhaps distinguishable from a charitable fund-raiser with a religious message. Even if not so distinguishable, the denial to the Baptist group would have been another act of discrimination rather than a justification for the denial in the instant matter
 
 
 [4]
 Because we rely solely on the actual conduct of the School District, we do not reach the question of whether or not Travis's proposed activity falls within the uses authorized by Section 414. Cf. Deeper Life, 852 F.2d at 680