The Honorable Vic Snyder State Senator 324 South Valmar Little Rock, Arkansas 72205
Dear Senator Snyder:
This is in response to your request for an opinion on whether the following areas are considered "public forums" in the context of First Amendment protected speech, specifically, the circulation of initiative and referendum petitions:
 The grounds of the State Capitol;
 Within the public areas of the State Capitol Building;
 On the grounds of the Arkansas State Fair and Livestock Association during any activities for which it is open to the public;
 County fairgrounds;
 The public areas surrounding and within buildings owned, leased, or occupied by state, county, municipal, or quasi-governmental agencies;
 The public areas of shopping malls;
 Public parks during public activities (e.g., Riverfest, concerts, sporting events);
 War Memorial Stadium or other facilities used for sporting events;
 Educational facilities or campuses?
Prior to addressing your specific questions, it is necessary to note some preliminary matters. This office has previously issued Opinion No. 90-221 (copy enclosed) to Representative Jim Lendall, which addresses the collecting of initiative and referendum signatures in many of the places you have mentioned. The conclusions of that opinion will not be restated here in detail, as it is enclosed for your review, but will be referred to in a summary fashion. It was stated in that opinion that the collecting of signatures on petitions is a form of speech which is protected under the First Amendment. See United States v. Cruikshank, 92 U.S. 542 (1875). It was also noted in that opinion, however, that the question of whether particular places where signatures might be collected are "public forums" is a question of fact. Opinion No. 90-221, note 2. See also Stewart v. District of Columbia Armory Bd., 863 F.2d 1013 (D.C. Cir. 1988), (stating that the granting of a motion to dismiss was improper on the public forum question, because it is inherently a question of fact, and that "it is virtually impossible in most cases to identify a public forum by legal inquiry alone"); and Grutzmacher v. Public Building Comm. of Chicago, 700 F.Supp. 1497 (N.D. Ill. 1988). As such, this office cannot offer a conclusive determination as to whether the places you have enumerated are indeed "public forums." We can, however, briefly detail the legal test used to determine wther certain places are "public forums," summarize the conclusions of Opinion No. 90-221 relevant to some of these places, and cite you to several federal cases which discuss the public forum question where very similar places were in issue.
The guide to determining whether a particular place is a public forum is set out in Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37 (1983), the holding of which has been summarized as follows:
 Government-owned property has been divided into three categories for purposes of forum analysis: (1) traditional public forums, which `by long tradition or by government fiat have been devoted to assembly and debate.' [Perry, supra] including such areas as public streets, parks and sidewalks; (2) public forums by government designation that are state-created and opened for limited public use, for example, university meeting facilities and municipal theaters; and (3) nonpublic forums which, by tradition or design, are not appropriate platforms for unrestrained communication Ä military installations and federal workplaces, for instance, fall into this category. [Emphasis original.]
Paulsen v. County of Nassau, 925 F.2d 65, 68-69 (2nd Cir. 1991).
In the first category, traditional public forums, the government may only regulate with content-neutral time, place and manner restrictions which are narrowly tailored to serve a significant governmental interest, and which leave open alternate channels of communication. United States v. Grace, 461 U.S. 171 (1983), citing Perry, supra. In rare instances, narrowly drawn content-based exclusions that are necessary to serve a compelling state interest are acceptable. Paulsey, supra at 69, (citing Frisby v. Schultz, 487 U.S. 474 (1988)). The same is true of public forums by government designation, where the state may limit access to certain speakers or subjects only if evenly applied to all similarly situated parties. Id. at 69, citing Perry, supra. In the third category, nonpublic forums, the state has maximum control over exercises of free speech rights. It is sufficient in these instances if rules and regulations reflect a legitimate government concern and do not suppress expression merely because public officials oppose the speaker's view. Id. at 69.
It has been held that the "primary factor in determining whether property owned or controlled by the government is a public forum is how the locale is used." International Society for Krishna Consciousness, Inc. v. New Jersey Sports and Exposition Authority, 691 F.2d 155, 160 (3rd Cir. 1982). This consideration is responsible for the factual nature of your inquiry.
With respect to the grounds of the State Capitol, the issue of whether these grounds are a public forum will depend upon their use. You may call upon your knowledge of how certain areas of these grounds have been historically used to aid in your determination of whether these grounds are either traditional or government designated public forums, or whether, in fact, they are nonpublic forums. It is my opinion, although the issue is a factual one, that certain areas of the Capitol grounds would be found by a court to be either traditional or government designated public forums.
The result is less clear with respect to areas inside the State Capitol Building. It is my opinion that areas inside the building will be less likely to be public forums, although there may be areas which have been designated as such by the state. This is a question which will involve an analysis of the state's intent. As stated in Hubbard Broadcasting v. Metropolitan Sports,797 F.2d 552 (8th Cir. 1986) cert. denied, 479 U.S. 986 (1986):
 [a] public forum is not created when the government permits limited discourse, `but only by intentionally opening a non-traditional forum for public discourse.' [Citation omitted.] In making this determination, the court may appropriately consider the nature of the property, its compatibility with the expressive activity that is being restricted, and the government's policy and practice to ascertain whether it intended to designate a public forum.
797 F.2d at 555.
If, when the factors above are weighed, it appears that the state's intent was to designate a particular area of the State Capitol Building as a public forum, the collecting of signatures in such areas can only be proscribed by reasonable time, place and manner restrictions, and in very limited instances, by content-based restrictions.
You have also inquired as to the "public forum" status of the Arkansas State Fair and county fairgrounds. It was noted in Opinion No. 90-221 that the United States Supreme Court has held that a state fair was at least a "limited public forum." Heffron v. International Society for Krishna Consciousness, 452 U.S. 640
(1981). The court there held, however, that fair authorities could restrict free speech activity to a specific fixed location at the fair. It is my opinion that a similar analysis would apply to the Arkansas State Fair and to county fairs.
You next inquire as to whether "public areas surrounding and within buildings owned, leased, or occupied by the state, county, municipal or quasi-governmental agencies" are public forums. Again, this question will depend upon the facts surrounding each such area. The question in each instance will be whether such areas have been designated as public forums by the government. It is my opinion, however, that these places are not public forums merely because they may be public property. It has been stated that:
 Not all public places are public forums. The Supreme Court has emphasized repeatedly that a place owned or controlled by the government does not become a public forum simply because members of the public are freely permitted to visit it. As the Court stated in Greer v. Spock, 424 U.S. 828 . . . (1976): `Such a principal of constitutional law has never existed, and does not exist now. The guarantees of the First Amendment have never meant `that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. [Citation omitted.] The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.'
International Society for Krishna Consciousness v. New Jersey Sports and Exposition Authority, supra, at 159, citing Greer v. Spock, supra, and Adderly [Adderley] v. Florida, 385 U.S. 39
(1966). See also Cornelius v. NAACP Legal Defense and Education Fund, 473 U.S. 788 (1985).
The question, again, is one of intent of the government to designate public forums. It is my opinion, generally, that state and city workplaces are not traditional public forums. See Cornelius, supra.
Your next inquiry focuses on the "public areas of shopping malls." The issue of collecting initiative or referendum signatures at privately owned shopping malls is discussed at length in Opinion No. 90-221. Briefly stated, the question of whether there is any constitutional protection afforded in such instances is a question dependent upon state law. Currently, there is no federally protected right to collect such signatures in a privately owned shopping mall, but each state, under its own state constitution, may decide that its constitution protects such a right. See Pruneyard Shopping Center v. Robbins,447 U.S. 74 (1980). As stated in Opinion No. 90-221, it is the opinion of this office that the Arkansas Supreme Court would not construe our Arkansas Constitution as granting a protected right to solicit initiative or referendum signatures in a privately owned shopping mall. This conclusion is based in part on Arkansas Constitution, Article 2, § 22 which provides that: "[t]he right of property is before and higher than any constitutional sanction. . . ."
The next part of your question refers to "public parks during public activities (e.g. Riverfest, concerts, sporting events"). Opinion No. 90-221 does not address this question, but it should be noted that it has been held that parks "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," and that "parks are considered, without more, to be `public forums.'" McCreary v. Stone, 739 F.2d 716 (2nd Cir. 1984) aff'd.471 U.S. 83 (1985), citing Hague v. CIO, 307 U.S. 496 (1939), and United States v. Grace, 461 U.S. 171 (1983). Thus, while the issue as to a particular park is a factual one, such parks are, at least in some instances, "traditional public forums" and the government may only promulgate reasonable time, place, and manner restrictions which are content-neutral, narrowly tailored to serve a significant governmental interest, and which leave open ample alternate means of communication. Perry Educ. Assn., supra, and United States Postal Service v. Council of Greenburgh Civic Assns., 453 U.S. 114 (1981). The state may, in some rare instances, also restrict First Amendment activity on the basis of content.
You next inquire about the "public forum" status of War Memorial Stadium and other facilities used for sporting events. Again the issue is one involving the determination of fact, specifically the intent of the state. I can refer you, however, to two federal cases holding that sports complexes, or at least parts of sports complexes, are not public forums. The Eighth Circuit Court of Appeals in Hubbard Broadcasting, supra, stated that it doubted whether the Hubert H. Humphrey Metrodome in Minneapolis, Minnesota was, as a whole, a public forum, stating:
 From the outset, the Commission intended the Metrodome to be a sports complex. The Metrodome is not a place of public assembly intended for the communication of ideas or for the exchange of different points of view. Rather, it is a commercial venture by the city constructed to meet the need for a major sports facility in the Twin Cities area and, at the same time, to provide economic benefits to the area. It follows that the Metrodome does not come within the scope of a traditional public forum.
797 F.2d at 555.
The court went on to define the issue more narrowly, as the speech in issue was advertising on the scoreboard system, and the question presented was whether this advertising space was a public forum, as opposed to the entire stadium. The court held it was not. The court cited with approval, however, a Third Circuit decision, International Society for Krishna Consciousness v. New Jersey Sports and Exposition Authority, supra, which held that the state-owned "Meadowlands Sports Complex" in New Jersey was not a public forum. See also Calash v. City of Bridgeport,788 F.2d 80 (2d Cir. 1986) (holding that Kennedy Stadium in Bridgeport is not a limited public forum for commercial expression). As stated in Stewart v. District of Columbia Armory Bd., supra, however (a case involving the issue of whether Robert F. Kennedy Memorial Stadium was a public forum), "the question . . . is inherently a factual one. . . ." 863 F.2d at 1014. It is possible that the facts surrounding War Memorial Stadium or other sports facilities may indicate that they were intended as government designated public forums. It was held in Paulsen, supra, that a county-owned stadium which was used for sporting events, concerts, charitable events and political rallies, was a public forum. This is a question which will ultimately have to be decided by a court or jury sitting as a fact-finder.
Your final inquiry concerns "[e]ducational facilities or campuses." This is a question which is addressed at length in Opinion No. 90-221. The issue as to whether these areas are "public forums," however, will depend upon the facts and exactly what areas of these facilities are involved. As to public educational facilities, certain areas of these facilities may be traditional public forums, may have been designated by the government as public forums, and may be "limited public forums." See Tinker v. Des Moines Independent Community School District,393 U.S. 503 (1969), (because the exchange of ideas is an essential part of the educational process, but the need for discipline and order is great, a public high school is probably a limited forum.) It has also been held, however, that "school facilities may be deemed to be public forums only if school authorities have `by policy or practice' opened those facilities `for indiscriminate use by the general public.'" Hazelwood School District v. Kuhlmeier, 484 U.S. 260 (1988), citing Perry, supra. See also Opinion No. 90-221 for cases discussing campuses. The analysis will depend upon the particular nature of the forum or area in question, and the intent of the government as to its use.
As regards private educational facilities, the issue is unclear. See Opinion No. 90-221, at 5-8.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh