DECISION
This matter is before the Court on the motion of Petra Finance Inc. (Petra) to file its answer and statement of claim out of time. For the reasons set forth below, the motion is granted.
 Facts and Travel
Defendant, Rhode Island Construction Services, Inc., (RI Construction) is the owner of an historic mill in Coventry, Rhode Island. Defendant is attempting to develop the mill for residential use. Plaintiff, Thomas Lonardo Associates, Inc., (Lonardo) alleges that it was retained to perform architectural services for the development under contracts in August and September 2006.
Zurich Mortgage Solution, LLC (Zurich) loaned $1,456,000 to RI Construction on September 6, 2006. This mortgage was recorded on October 20, 2006 as a first mortgage lien. On October 20, 2006, Zurich assigned or sold the mortgage to American Residential Equities, LLC ("ARE"). ARE did not promptly record the assignment. *Page 2 
Lonardo continued to perform more work for RI Construction under a variety of agreements. In September 2007, Lonardo filed the complaint herein against RI Construction seeking to enforce a mechanics' lien, appoint a receiver, and enjoin any other conveyances by Lonardo. Lonardo claimed RI Construction's outstanding debt to Lonardo was $778,112.67.[1] Lonardo also recorded documents to protect its alleged mechanics lien. A citation was issued by the court for Zurich, and another citation was advertised.[2] The certified mail green card was never returned, but Zurich was also notified by regular mail. Zurich did not respond or appear. Apparently, Lonardo did not know of ARE's interest in the mortgage.
Lonardo and RI Construction entered into protracted negotiations, with and without the Court. In November of 2007, at the suggestion of counsel, a Special Master was appointed by the Court to conduct an investigation into the finances of RI Construction.
On February 4, 2008, ARE recorded its assignment from Zurich at the Registry of Deeds. On February 14th, ARE assigned or sold its interest in the mortgage to Petra, but it did not send the assignment form to Petra until March 5, 2008. ARE did not inform Petra of the specific problems with the title or the pending litigation. Petra recorded its assignment on March 20, 2008, and is the current holder of the mortgage and note. Soon after recording the assignment, Petra ordered a title search. Petra learned of the mechanics lien when it received a title report in May 2008.
On May 13, 2008, RI Construction petitioned the court that it be converted into a receivership (K.M. No. 08-646). Citations were issued and counsel for Petra appeared for the ensuing negotiations. Clearly, Petra's attorney had been provided with minimal notice of the *Page 3 
proceedings, or the complex finances of RI Construction, [3] but attempted to cooperate with the Court, while protecting its interest. Over Petra's objection, a receiver was appointed.
In July 2008, Petra filed its motion in this action for leave to file its claim and answer out of time.
 Analysis
Only Lonardo objects to this motion. It is noteworthy that neither the Receiver nor the original counsel for RI Construction objected to this request. Lonardo objects even though it knew the mortgage existed on the properties before it petitioned for court relief or performed most of its services for RI Construction.
This motion, therefore, is a quarrel between two competing creditors: one with a recorded first mortgage interest of over a million dollars attempting to foreclose, and the other apparently seeking to obtain priority over the known creditor.
The Statutory Scheme.
The procedure for a mechanics lien is a multi-step process. First, a notice is recorded on the title records. G.L. 1956 § 34-28-4 et seq. Suit may then be filed. Section 34-28-10. Notice is then provided to creditors and claimants. Section 34-28-14. After claims are contested, the court shall order a sale. Section 34-28-21. Here, notice was allegedly given, at least one claim was filed, but no party requested an order of sale.
The statutory framework[4] broadly defines who may contest the action:
 34-28-20. Persons entitled to contest claims. — Every defendant to any complaint and every person claiming to have a lien under *Page 4 
§ 34-28-1, 34-28-2 or 34-28-3 on the property described therein or on any part thereof, and every person claiming an interest therein by title, claim, lease, mortgage, attachment, or other lien or encumbrance, may contest the right of the plaintiff and of all others claiming a lien under this chapter to the property or any part thereof to any lien, as well as the amount of the claim. (Emphasis added.)
Failure to promptly contest the claim results in the loss of a mortgage's priority status.
 34-28-16. Entry of appearance and filing of account or claim.-(a) The liens, under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7, of all persons, . . . and the title, claim, lease, mortgage, attachment, or other lien or encumbrance of all persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance . . . to or in the property which is the subject matter of the complaint, except the persons who have recorded the lien or encumbrance before the filing of the complaint and who have not been served with or mailed a citation as provided in § 34-28-15 and who have no actual knowledge, on or before the return day, of the pendency of the complaint, shall be subordinated to the claim of the plaintiff, and persons claiming liens pursuant to this chapter, and any other person having any mortgage, attachment, or other lien or encumbrance who have entered an appearance as a party in the cause, unless the person shall, within twenty (20) days after the return day, or within such other time as may be allowed by the superior court pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure enter an appearance as a party in the cause commenced by the complaint described in §§ 34-28-10 and 34-28-13 and shall file an answer as follows:
 (1) . . .
 (2) In the case of persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance (other than under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7), file a claim setting forth the particulars thereof and praying for the relief and priority to which the person shall deem himself or herself entitled.
 (b) . . .
(Emphasis added.) *Page 5 
Accordingly, petitioner can avoid the death knell of the legal subordination either if it did not receive actual notice of the filing of the mechanics lien or filed a timely request for relief from the order.[5] Here, Petra attempts to establish both.
Application of the statutory standard.
Although creditors who fail to file claims are normally preempted from proceeding in a mechanics lien action, the statute allows for late claims and answers in limited circumstances. In doing so, § 34-28-16
specifically incorporates the criteria of Rhode Island Rule of Civil Procedure 60:
Rule 60 Relief from Judgment or Order. (a). . . .
 (b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. . . . *Page 6 
Within the past month, our Supreme Court considered the complexities of this Rule. The Chief Justice noted:
 A leading treatise notes that Rule 60(b)'s federal counterpart attempts a "proper balance" between two conflicting principles: to ensure that justice has been done, yet to effectuate an end to litigation. 11 Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure § 2851 at 227 (1995). Motions based on Rule 60(b) must therefore be brought within a "reasonable time" of the entry of the judgment that they propose to vacate. For such motions based upon the reasons set forth in Rule 60(b)(1), (2), and (3), the "extreme limit" of reasonableness permitted by the rule is one year, although a court may find a "reasonable time" to be less, "dependent on the facts and circumstances of each case." Tierney v. Conley, 590 A.2d 865, 866 (R.I. 1991) (quoting Murphy v. Bocchio, 114 R.I. 679, 685, 338 A.2d 519, 523-24 (1975)). "Thus, undue delay may bar relief, even if the motion is made before the one-year period has expired." Waldeck v. Domenic Lombardi Realty, Inc., 425 A.2d 81, 83
(R.I. 1981). Sansone v. Morton Machinery Works, Inc. 2008 WL 4635829, 8 (R.I., 2008).
The statute requires the application of a Rule 60 analysis, even though that rule is designed to provide relief from a judgment or order. Here, no judgment has issued. No sale has been ordered, Petra has not been defaulted, and no judgment has entered. The litigation is far from any finality. Petra merely failed to respond timely to a citation which was never served directly upon it.[6]
Excusable neglect.
In its motion, Petra contends that it committed excusable neglect, Super. R. Civ. P 60(b)(1), and that there are other reasons justifying relief, Super. R. Civ. P. 60(b)(6). Through *Page 7 
the testimony of David Merrill, Esq., Petra established that its goal was to ensure that it had control of the potential asset. In its memoranda, Petra accused Zurich of fraudulent conduct. ARE has filed suit in Florida alleging that Zurich committed fraud in misrepresenting the security for this mortgage. While that may be the subject of Florida litigation, Petra failed to establish clear fraud here. Nevertheless, promptly obtaining control of the asset (the mortgage) prior to completing its due diligence review of the asset was both logical and appropriate.
Attorney Merrill's testimony established that promptly after receiving the assignment, Petra recorded it, and intended to foreclose. Given the fast pace of the Rhode Island proceedings and the limited cooperation of its predecessors in title, Petra did not contest that notice was sent out, and one deadline was missed.
Petra established that the fault was not its own. Upon receiving information concerning the receivership and the mechanic's lien, Petra acted quickly and diligently. Not only did they cooperate with the court, but they conferred with opposing counsel. Any delay of Petra was neither undue nor unreasonable. Petra never received direct notice, nor was there any likelihood that it saw the advertisements.
Petra, for its part, is a creditor proceeding in good faith. It was the second assignee of a mortgage presumably in arrears, and received no direct notice of the court's actions. Upon receiving the document, it recorded the assignment seasonably (though its predecessors were slow in doing so). Notice may have been sent to Petra's predecessors in title, but Petra established that it had no knowledge of the mechanics' lien action until several weeks after it recorded its assignment.
At first blush, this Court is reluctant to conclude that Petra committed any excusable neglect, solely because the Court is hard-pressed to find any neglect on Petra's part at all. ARE, *Page 8 
the first assignee, recorded its assignment after an extended delay, and delayed in sending its assignment to Petra. Petra recorded its assignment promptly upon receiving it.
Our High Court recently discussed the standard to be applied when searching for excusable neglect:
 It is well settled that unexplained neglect, whether by a party or its counsel, standing alone, will not automatically excuse noncompliance with orderly procedural requirements. Relief from a [party's] failure to comply with procedural requirements will not be granted unless it is first factually established that [the] neglect was occasioned by some extenuating circumstance of sufficient significance to render it excusable. We have explained excusable neglect as a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party. Jacksonbay Builders, Inc. v. Azarmi, 869 A.2d 580, 584 (R.I. 2005) (quotations and citations omitted).
Not only did Petra not know of the bar date, it should have been told by others who either ignored Petra's position or hoped to sabotage it. Ironically, the assignment was recorded just one day after a consent order was entered in this action. That consent order acknowledged that a preexisting mortgage was already on the property, and the prior mortgage would continue to have priority. (Order of March 19, 2008, paragraph 3.) Petra therefore acted with care and vigilance. Any neglect of Petra was excusable. It was not the result of its carelessness, inattention or willful disregard. Petra's failure to act was a result of unexpected and unavoidable actions.
While not a basis for this decision, Lonardo never showed that Petra had failed to follow its normal procedures or the normal procedures for its industry. Rather, Lonardo sought to gain a tactical advantage by rushing to the court first, although it knew of the substantial mortgage which already existed on the property. It commenced significant work on the project after the *Page 9 
mortgage was recorded. There was no doubt that eventually the mortgagee who was due a debt of $1,456,000 would eventually appear. It was Lonardo who proceeded while knowing the risk.
 Conclusion
Having found that excusable neglect exists, the Court need not address the issue of "mistake" or "surprise" which would also afford it relief, pursuant to Super. R. Civ. P. 60(b)(1), though there was no showing that Petra had any knowledge of the mechanic's lien before it received the assignment. The Court also need not address the possibility of relief pursuant to Super. R. Civ. P 60(b)(6) "any other reason justifying relief."
Super. R. Civ. P. 60 allows the Court to set "such terms as are just" in vacating any order. This would normally include remuneration for any harm caused to any parties as a result of the default or delay. Here, there does not appear to be any prejudice. No rights have yet been determined with finality, and no judgment has entered so the other parties are not unfairly burdened by having others seated at the counsel table. Lonardo knew from the outset that its debt was subject to a prior mortgage — it remains in the same position. The Court will consider only whether any other prejudice occurred, such as discovery costs for the pending motion, and such issues are preserved for further consideration, if requested by the parties.
Petra's motion for leave to file its claim out of time, pursuant to G.L. 1956 § 34-28-16 is granted. Counsel for Petra shall submit an Order consistent with this decision.
[1] According to exhibit 4 attached to Lonardo's complaint. The exhibit reflects that less than $40,000 of the outstanding bill was for work invoiced prior to October 20, 2006.
[2] The advertisements ran in The Providence Journal. Zurich and ARE are both located in Florida.
[3] RI Construction was applying for historic tax credits and, because of legislation pending before the Rhode Island General Assembly, had limited time to complete its application.
[4] It is noteworthy that the statutory scheme has been the subject of several successful due process challenges. As a result, the Rhode Island General Assembly has amended the mechanics lien law several times, to comply with constitutional parameters. See D'Amico v. Morris,,2004 WL 2075574, R.I.Super., September 18, 2004, pp. 2-4. (constitutional challenges).
[5] Even after the mechanics' lien action is instituted, the mortgagee retains substantial power to foreclose:
 34-28-16.1. Petition to foreclose mortgage.
— At any time after the filing of a petition under § 34-28-10, the holder of a mortgage having a priority over liens existing under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7 may petition the court to exercise the power of sale contained in the mortgage and the court shall grant the petition to foreclose, after notice to all interested parties and hearing thereon, upon a showing by the mortgagee that the mortgage is valid, entitled to priority and is in default, except for a default arising from the filing of a petition to enforce pursuant to § 34-28-10.
[6] Even if a default had been entered in a conventional civil case, the standard to vacate the default would be mere "good cause shown." Super. R. Civ. P. 55(c). Nevertheless, our legislature chose to adopt a higher standard by enacting the statute, and it will not be questioned here.